No. 03-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 15

DEBRA J. FLOOD, formerly DEBRA J. COOK,

      Plaintiff and Appellant,

  v.

MURAT KALINYAPRAK,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                     In and for the County of Lake, Cause No. DV-01-138,
                     The Honorable Deborah Kim Christopher, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Keith W. McCurdy, McCurdy Law Firm, P.C., Polson, Montana

      For Respondent:

           Philip J. Grainey, French & Grainey Law Firm, Ronan, Montana

                       Submitted on Briefs:  January 6, 2004

                                   Decided:  January 28, 2004

Filed:

                               Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Debra Flood (Debra) appeals from an order of the Twentieth Judicial District Court, Lake County, equally dividing the proceeds of real estate assets she held as a tenant in common with Murat Kalinyaprak (Murat).  We affirm in part, reverse in part and remand for entry of judgment consistent with this Opinion.

¶2     We address the following issues on appeal:

¶3     Did the District Court apply the correct standard to the division of assets held as tenants in common by an unmarried couple in a partition action?

¶4     Were the District Court's findings of fact clearly erroneous?

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶5     Debra and Murat met in 1986 in California.  In 1992, their relationship became more serious and the two decided to live together.  After moving to Montana, Debra continued her business buying, remodeling, and selling real estate, while Murat started a business called Computerman.  They agreed that Debra would finance housing for the parties while Murat would pay for the other living expenses.  They opened a joint checking account to facilitate this arrangement.  At the same time, both parties maintained separate banking accounts for their individual and business use.

¶6     In December 1992, Debra and Murat purchased bare land outside of Polson referred to as Lots 10, 21, 22, and 24 of Jette Ranch.  Title to these lots was placed in both names as tenants in common and the total purchase price was approximately $34,000.  Debra paid approximately $7,300 and Murat paid approximately $26,700.  They orally agreed to proportional ownership based on their respective contributions, however they did not apply

2

the proportional ownership equally to each lot. Rather, Murat owned a greater percentage of some of the lots than others. No designation was included in the deeds or in any other writing which reflected the unequal ownership.

¶7    In April 1993, Debra bought a home at 917 11th Street East in Polson for the two to live in. She did not take out a mortgage but used money she had accumulated from earlier real estate investments. Title to the property was in her name alone. When Debra sold the 917 11th Street East home in June 1995, she netted approximately $33,400 profit ($117,500 sale price minus $72,000 purchase price and remodeling costs). Debra eventually deposited most of the proceeds from this sale into her personal account.

¶8    In May 1995, the parties began building a home on Lot 10 of Jette Ranch. Apparently they were able to move to the property only a couple months after construction began. Eventually, they constructed a road to the property, a home, a well, and outbuildings. The parties financed this construction with the proceeds from the sale of Debra's home at 917 11th Street East. The construction ended up costing approximately $110,000.

¶9    About two months after the 917 11th Street East property sold, Lots 21, 22, and 24 of Jette Ranch also sold for approximately $85,500. The majority of this money was invested in a joint money market account in both Debra and Murat's names. The balance was deposited in the joint checking account.

¶10    Debra and Murat continued their relationship after moving to the home on Lot 10. However, in January 1997, the parties decided their relationship was over and they agreed to split the proceeds of the joint money market account. Of the money in the account, Debra received approximately $53,355 and Murat received approximately $34,410 per their

3

agreement at that time. In February 1997, Lot 10 was listed for sale for about $250,000. However, both Debra and Murat continued to live there. Finally, in September 1998, Debra decided the situation was unacceptable and she returned to California. Murat continued to reside at the house on Lot 10.

¶11 No offers to buy Lot 10 were received for a time. Then, in 2001, an offer of $180,000 was received. Debra wanted to accept the offer, but Murat refused. In August 2001, Debra initiated this partition action pursuant to § 70-29-101, MCA, to force Murat to accept the latest offer on the property. Debra also brought a claim for unjust enrichment, asserting that she was entitled to a greater than 50% share of the proceeds of the pending sale. She claimed that Murat would be unjustly enriched by receiving a 50% share because she had contributed the bulk of the cost of the construction of the house out of her personal account. In addition, Debra claimed she was due rent for the time Murat lived alone at the house. Based on these claims, she requested that a constructive trust be imposed on Lot 10.

¶12 In November 2001, Murat and Debra apparently accepted an offer of $198,000 to buy the Lot 10 house and property. Murat answered Debra's complaint. He eventually asserted that he was entitled to 50% of the proceeds of the sale of Lot 10 because he supported Debra's living expenses during the time they were together, because he believed he was a half owner of the 917 11th Street East property, because he contributed labor to the remodel of 917 11th Street East, because he contributed labor on the construction of the house at Lot 10 and because he had contributed money to both properties.

¶13 Trial was had in July 2002. Both parties presented an accounting, testimony of their intent, and other evidence. Based on its review of the evidence, the trial court decided that

4

each party owned 50% of the Lot 10 property and that the proceeds from the sale should be split equally. The court also found that Debra was over credited from the proceeds from the sale of Lots 21, 22, and 24 by $10,930.02. Further, the District Court determined that for the 38 months that Murat was living at Lot 10 alone, he owed Debra 50% of the $600 monthly rental value of the property, minus 50% of the costs for taxes and insurance which Murat paid. Based on this conclusion, the court determined Murat owed Debra $8,679.98 for rent. Netting these two figures, the court held that Debra owed Murat $2,250.04. Finally, the court denied Debra's claims for unjust enrichment and constructive trust. Debra filed a motion to alter or amend which the court denied. Debra now appeals. Further facts are discussed below as necessary.

## II. STANDARD OF REVIEW

¶14 We review findings of fact in a partition action to determine whether the findings are clearly erroneous. *Tillett v. Lippert* (1996), 275 Mont. 1, 5, 909 P.2d 1158, 1160. *See also Daines v. Knight* (1995), 269 Mont. 320, 325, 888 P.2d 904, 906. Further, we review a district court's conclusions of law to determine whether they are correct. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, ¶ 22, 51 P.3d 486, ¶ 22.

## III. DISCUSSION

¶15 Before we turn to the issues presented on appeal, we note undisputed aspects of this case that set the context for our review. First, neither of the parties allege they were ever married under common law. Second, this case concerns only the property held by Debra and Murat as tenants in common because, with the exception of the 917 11th Street East house, the parties did not present claims regarding their other property to the District Court.

5

Therefore, we need not consider any of the assets Debra or Murat held individually including Debra's IRA, securities, other real property or Murat's business account. Third, neither party asserts that there was a written agreement governing the distribution of their assets upon separation. Finally, in spite of a remark by the District Court, neither party asserts the Marriage and Divorce Act, § 40-4-202, MCA, governing division of assets upon dissolution of marriage is applicable. Against this background, we turn to the issues presented.

## ISSUE ONE

¶16 **Did the District Court apply the correct standard to the division of assets held as tenants in common by an unmarried couple in a partition action?**

¶17 The District Court noted, and we agree, that partition is an equitable action in which the court has great flexibility in fashioning appropriate relief for the parties. *Frame v. Frame* (1987), 227 Mont. 439, 443, 740 P.2d 655, 658. The court also stated that tenants in common are presumed to own property equally absent an agreement to the contrary. The court also noted that the parties had an agreement regarding the ownership shares of the bare land on Lots 10, 21, 22, and 24. The District Court, for some reason, stated that it should examine Debra and Murat's situation in a way "similar to that which would be conducted in a divorce" in order to determine an equitable division of assets. Further, the court noted its equitable approach required an assessment of monetary contributions, other expenditures that enabled the parties to acquire and maintain the property, conduct of the parties, and expressed intent of the parties. Finally, the court also noted that it would be "unfair . . . to allow [Debra's] contributions to be preserved in an asset and [Murat's] contributions simply dissipated."

6

¶18 Debra asserts the court's approach is in error. Citing case law from other jurisdictions, Debra argues that tenants in common are presumed to share equally if there is no indication otherwise in the deed, but are presumed to share based on contribution if there is evidence showing contribution. She further argues that her contribution to Lot 10 was far greater than Murat's because she paid for most, at least $109,843, of the cost of the construction of the house. Debra asserts that she is entitled to full return on her contribution investment out of the sale of the property. According to her calculations, Debra believes that she contributed approximately 80% to the purchase of Lot 10 and the construction of the house situated there, while Murat contributed approximately 20%.

¶19 Murat argues the District Court's approach was proper. He cites case law from other jurisdictions which also applied a divorce type analysis. *See, e.g., Zion Constr. v. Gilmore* (Wash. Ct. App. 1995), 895 P.2d 864. Further, Murat points out that he believes the court's ultimate resolution was equitable and just even though he concedes there are inconsistencies in the order.

¶20 While the approach used to partition the property here could be termed similar to that used to divide a marital estate in a dissolution action, as equitable principles are applied and contribution is a factor, we do not utilize the Marriage and Divorce Act as a guide to make our decision here.

¶21 As noted, partition actions are based in equity. We have held that "[p]artitions should be fashioned to cause the least degree of harm to the cotenants and to confer no unfair advantage on any one cotenant." *Kravik v. Lewis* (1984), 213 Mont. 448, 454, 691 P.2d 1373, 1376. *See also* § 70-29-209(2), MCA, ("In all cases the court has power to make

7

compensatory adjustment between the respective parties according to the ordinary principles of equity."). Because a partition action allows equitable consideration of the parties' interests regardless of their status relative to each other, we hold that a partition action is a proper proceeding in which to determine the relative interests of an unmarried couple, who were in an intimate relationship and are co-owners of property. *C.f. Watts v. Watts* (Wis. 1987), 405 N.W.2d 303 (unmarried cohabitant can state a claim for an accounting and share of accumulated property under theory of contract, theory of constructive trust based upon unjust enrichment, and partition theory).

¶22    The fundamental goal of the court in a partition action is to allocate the property according to the respective rights of the parties. *See* § 70-29-101, MCA; § 70-29-201, MCA. In this case, the parties held the property as tenants in common. Although the District Court did not cite any case law regarding tenants in common, such case law is controlling here.

¶23    We have specifically addressed the division of assets held by tenants in common. *In re Estate of Dern Family Trust* (1996), 279 Mont. 138, 928 P.2d 123. In *Dern*, we upheld the basic rule that assets held by tenants in common are presumed to be divided equally because the assets are presumed to be owned equally. *Dern*, 279 Mont. at 151-53, 928 P.2d at 131-33. However, we also adopted the rule that the presumption shifts where there is evidence of unequal contribution. Specifically, when the preponderance of the evidence establishes that the cotenants contributed unequally to the value of the property to be divided, it will be presumed that the property will be divided in proportion to each cotenant's contribution. *Dern*, 279 Mont. at 152-53, 928 P.2d at 132-33. We further held that the presumption where one contributes unequally to the purchase price does not necessarily

8

apply "where the relationship between the parties indicates that one might have intended to make a gift to the other." *Dern*, 279 Mont. at 152, 928 P.2d at 132. We held that the party who then seeks to establish the parties intended a division disproportionate to their contributions has the burden of demonstrating this intent. *Dern*, 279 Mont. at 153, 928 P.2d at 132. Therefore, all relevant evidence of the parties' intent is admissible to sustain or rebut the presumptions.

¶24 We decide here whether the District Court's approach nevertheless properly considered the conduct of these parties over the course of their business relationship in determining whether they intended to share their assets differently from their relative contributions to the purchase price of the house and land at Lot 10. Under *Dern*, Debra would be entitled to the return of her contribution of over $100,000 to the purchase and construction at Lot 10 unless a contrary intent is proven by a preponderance of the evidence. Such a contrary intent is, however, shown.

¶25 In this case, Debra originally brought the partition action to force Murat to sell because he refused to sign a buy-sell. This procedure was proper. However, it was Debra who then asserted the division of assets must follow contribution rather than considering equitable issues. In contrast, it was Murat who argued that the broader context of the relationship of the parties, including evidence of their intent based on conduct, must be considered in order to equitably divide the asset. Given the evidence before it, the approach the District Court used essentially agreed with Murat.

¶26 We agree with the District Court. To ignore the conduct of these cotenants during their relationship, as such is relevant to establishing their intent as to how property held as

9

tenants in common is to be divided when they part ways, would be to ignore the reality that how the parties conducted their relationship is relevant circumstantial evidence of such intent. Any division of assets between the couple must provide for a fair distribution of the economic gains and losses incident to property jointly held. As we stated in *Dern*, "the relationship between the parties" may indicate that one might have intended to share their contribution unequally. *Dern*, 279 Mont. at 152, 928 P.2d at 132. Therefore, the District Court applied the correct standard and its holding is in accord with *Dern*.

¶27    It was proper for the District Court, in addressing Debra's claims for partition, unjust enrichment, and constructive trust, to look to the parties' dealings with their property over the course of their relationship to determine their intent regarding what their respective shares would be in the proceeds from the sale of Lot 10. Specifically, it was proper for the District Court to consider Murat's overall contribution to the acquisition of assets rather than simply his direct monetary contribution to the purchase of Lot 10 and the construction of the house on the property. Further, it was proper for the court to consider, based on how the parties had conducted their business relationship, that a division of assets based on monetary contribution alone would allow Debra to preserve her assets while Murat's would be dissipated. We note that under *Dern*, Murat had the burden to prove that Debra intended her ultimate rights to the property to be less than her monetary contribution to the property, and that she intended to give him a share in the property greater than his direct monetary contribution. As we discuss below, Murat met that burden.

¶28    Before turning to the facts of this case, we reiterate the rules here. Tenants in common are presumed to own equally. When there is evidence of unequal contribution to

10

an asset, tenants in common are presumed to own in proportion to their contribution. Evidence of a different intent may be introduced to rebut either presumption. The intent of the cotenants must be proven by a preponderance of the evidence, and may be demonstrated by conduct over the course of time, sharing of other expenses, labor, or any other admissible means. Finally, in a partition action, a court may consider a final resolution that confers no unfair advantage on any cotenant in light of all the evidence.

## ISSUE TWO

¶29 **Were the District Court's findings of fact clearly erroneous?**

¶30 Having concluded the District Court properly considered evidence regarding the intent of the parties during their entire cohabitation to determine their respective interests in Lot 10, we now consider the court's findings of fact.

¶31 Debra asserts the trial court erred in considering the e-mail correspondence she sent Murat offering to settle their differences if he paid her half the price of the home. She asserts that the e-mails were inadmissible under Rule 408, M.R.Evid., as the e-mails were offers to compromise a disputed claim. She also argues that because Murat never accepted the offers she made for a 50-50 split before filing her claim in court, such are not binding on the court.

¶32 Murat points out that Debra made no objection to the admission of these e-mails during trial so her argument is not preserved for appeal. He also asserts that admission of the e-mails does not violate Rule 408, M.R.Evid., because the e-mails were sent before Debra filed her claim and were intended to encourage sale of the property rather than settle a disputed interest in the property.

¶33 The record demonstrates Debra failed to preserve an argument that the e-mails were

inadmissible. We do not consider arguments a party failed to preserve because it is unfair to fault the trial court on an issue it was never given an opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. Therefore, while such e-mail correspondence does not on its face appear to consist of offers of compromise, we do not consider Debra's arguments relating to Rule 408, M.R.Evid., on appeal.

¶34 In its findings of fact, the court stated:

> The parties agreed and both testified that the understanding and fundamental basis of their relationship was [Debra] would provide housing for the parties and [Murat] would pay for the living expenses of the parties. The overriding principle throughout the relationship of the parties appears to be an intention between the parties to assist each other is [sic] their investments (her real estate) or work (his computer business), to split their expenses and to share their assets.

The court further found that the "most credible evidence of the agreement of the parties" was their actions with regard to the underlying split between housing and living expenses; their division of the proceeds from the sale of Lots 21, 22, and 24 at the time their intimate relationship ended; and their preserved communications including Debra's e-mails stating that Murat had a 50% interest in the property and house on Lot 10.

¶35 The parties agree with the first sentence of the court's statement finding that the parties agreed Debra would provide housing and Murat would pay for living expenses. However, Debra asserts this understanding was only intended to continue for the course of the relationship. She further argues that the District Court was clearly erroneous in finding that they had an overriding intent to share their assets equally. Debra argues that because the court found she invested all the proceeds from the sale of the 917 11th Street East house

12

in the construction of the house on Lot 10, the court was required to determine she was entitled to a superior interest proportionate to this contribution.

¶36  Murat contends the court's finding of an intent to split their assets equally was not clearly erroneous because he believed they co-owned the 917 11th Street East house and he contributed labor and money to Lot 10.

¶37  After reviewing the evidence submitted at trial, we hold that the District Court's finding regarding Debra and Murat's intent to split their assets equally is supported by substantial evidence and is not clearly erroneous.  As mentioned, it is undisputed the parties agreed to split their expenses by Debra paying for the housing and Murat paying for the living expenses.  Debra concedes in her brief that Murat spent at least $59,000 on ordinary living expenses during the time the two were together as part of this agreement.  In addition, the parties split the proceeds from Lots 21, 22, and 24 roughly equally even though Murat paid a substantially greater share in the original purchase price.  Further, Murat helped with the construction of the house on Lot 10, with the remodel at 917 11th Street East and he also contributed some money.

¶38  Finally, Debra's e-mails contain statements that demonstrate from the time the parties settled part of the distribution of their assets in early 1997, it was her intent to share evenly with Murat the proceeds from the sale of Lot 10 and its house.  In her e-mails to Murat she stated: "You live in a house that I financially own half of;" "I don't feel I have any rights to that which is supposedly half my home;" and "Since you own 50% of the house you could get a non-qualifying loan."  In an e-mail to the real estate broker, Debra stated: "In your communications with [Murat], please impress upon him that I encourage him to accept the

13

$180,000.00 offer or, counter no higher than $190,000.00 or sign a legally binding contract stating he will buy me out within 60 days for $95,000 cash." These statements by Debra indicate an intent to split the proceeds equally and we will not hold the District Court in error for so interpreting them.

¶39 Although we have determined the District Court properly awarded a 50% interest to both Debra and Murat in the house and property at Lot 10, we must also consider the court's other findings that Debra overpaid Murat when they split the proceeds of Lots 21, 22, and 24 and regarding the rent due to Debra from Murat.

¶40 Both parties agree the trial court erred in finding both that they settled the distribution of the money market account and in finding that Murat overpaid Debra for her share of the proceeds of Lots 21, 22, and 24. We agree. The facts demonstrate the parties do not dispute their settlement concerning Lots 21, 22, and 24 was final and complete. The fact of this settlement was considered only as evidence of a general intent to share assets. Therefore, the District Court's finding that Murat overpaid Debra by $10,930.02 as a part of this previous settlement is clearly erroneous. Accordingly, we reverse that portion of the court's order awarding Murat $10,930.02.

¶41 Regarding the court's finding that Murat owed Debra rent, the court did not cite any case law or refer to any rule regarding rent. However, "the general rule is that a [tenant in common] in possession is not liable for the use and occupation of the premises" until a tenant out of possession brings an action demanding "the equivalent of joint possession." *Lawrence v. Harvey* (1980), 186 Mont. 314, 324, 607 P.2d 551, 557.

¶42 Murat asserts agreement between the parties should control regarding rent and that

there is no evidence showing that they agreed Murat would pay rent. He notes the Court ordered he pay rent under Debra's unjust enrichment claim, not pursuant to an agreement. Murat also notes that given the court's determination Debra was overpaid from the proceeds of Lots 21, 22, and 24, the court's conclusion regarding rent is still equitable even if in error.

¶43 Debra asserts that Murat failed to cross appeal the issue of rent and that therefore the District Court's order must stand.

¶44 We disagree. Because Debra appeals the District Court's determination of the equitable rights between the parties regarding Lot 10 and because the court made its findings and conclusions on rent as part of its overall equitable division of the asset, we may consider the issue of rent. Contrary to its findings of an intent to split their assets equally, the court found the parties made no agreement regarding rent. Therefore, the District Court did not correctly apply the law, as stated above. Thus, we also reverse that portion of the court's order awarding Debra $8,679.98 in rent.

## V. CONCLUSION

¶45 The District Court properly considered the conduct of the parties during their relationship to determine what their intent was regarding the distribution of the proceeds from the sale of Lot 10 and the house thereon. The court's judgment that such proceeds should be distributed in equal shares is affirmed. However, the District Court erred in adjusting previous settlements of the parties regarding other assets when those agreements were not in dispute as also noted by the court. Therefore, the judgment that Debra owes Murat $10,930.02 is reversed. Finally, the court erred in awarding Debra rent from Murat. Therefore, the judgment awarding Debra $8,679.98 is also reversed. In sum, the judgment

15

credit to Murat in the amount of $2,250.04 is reversed.  We affirm in part, reverse in part, and remand for entry of judgment consistent with this Opinion.

¶46     Each party shall pay their own costs on appeal.


                                                        /S/ JOHN WARNER



We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JIM RICE