

FILED

May 27 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 188

JAMES A. LeFEBER,

      Petitioner and Appellant,

    v.

MAGGIE R. JOHNSON, a/k/a MARGARET ROSE JOHNSON,

      Respondent, Appellee, and Cross-Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 05-454
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Torrance L. Coburn and Raymond P. Tipp, Tipp & Buley, Missoula,
Montana

      For Appellee:

          Ronald A. Thuesen and P. Mars Scott, P. Mars Scott Law Offices, Missoula,
Montana

                Submitted on Briefs:  April 22, 2009

                         Decided:  May 27, 2009

Filed:

          _____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    James A. LeFeber (LeFeber) appeals the judgment and order of the Twenty-first Judicial District Court, Ravalli County. The District Court applied equitable principles to settle the unmarried couple's interests in real property. Margaret Rose Johnson (Johnson) cross-appeals.

¶2    We review the following issues on appeal:

¶3    *Did the District Court properly apply equitable doctrines to the division of property held by LeFeber and Johnson?*

¶4    *Did the District Court correctly determine that LeFeber and Johnson owned the St. Joseph property as tenants in common?*

¶5    *Did the District Court correctly partition the St. Joseph property by granting LeFeber and Johnson each an undivided one-half interest in the property?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶6    LeFeber and Johnson dispute the ownership of property located at 297 St. Joseph Lane (St. Joseph property) in Stevensville, Montana. LeFeber and Johnson began living together in October of 1984 in Sandpoint, Idaho. LeFeber and Johnson maintained an intimate and exclusive relationship for over twenty years until their relationship ended in 2005. Neither party asserts common-law marriage. LeFeber and Johnson moved to Richland, Washington, in 1987, and to Walla Walla, Washington, in 1991. They jointly rented houses in each location, but did not purchase a house.

2

¶7     LeFeber and Johnson initialed a Full Durable Power of Attorney (POA) on December 1, 1991. LeFeber drafted the POA using a form that he had received from a friend. The POA provided that Johnson, as attorney-in-fact for LeFeber in his stead, could do any and all acts that he could do if personally present. The POA enumerated several of Johnson's powers, including the right to act as a personal nominee, to manage real estate, and to manage hydrocarbon interests. The POA provided that the enumeration of powers did not limit or reduce Johnson's powers as attorney-in-fact. The POA did not specifically address future acquired, assigned, or conveyed property. The POA provided that LeFeber could revoke the POA by a writing to Johnson. The POA also provided that by signing the document Johnson accepted the attorney-in-fact appointment and agreed to return any and all possessions to LeFeber's name if he revoked Johnson's powers.

¶8     LeFeber conveyed and assigned to Johnson interests in several of his hydrocarbon/oil and gas properties four days after he signed the POA. Johnson understood that she took title of the properties pursuant to the POA. The oil and gas companies then issued production checks to Johnson in her name. Johnson deposited the checks in a joint bank account accessible to both parties. Interest from the account provided Johnson with her spending money. Johnson later would transfer to LeFeber the principal amounts that the companies paid to her. Johnson also would issue, under the advice of LeFeber's accountant, a federal tax form 1099 to LeFeber at the end of the year for the miscellaneous income paid by the oil and gas companies. The parties followed this procedure until they separated in September of 2005. Johnson then reconveyed and reassigned the hydrocarbon properties to LeFeber as she

3

understood the POA required her to do because LeFeber owned the properties outright before the 1991 assignment to Johnson.

¶9   LeFeber had the POA witnessed in Montana in the fall of 1994 after the IRS questioned pass-throughs of oil and gas interests from Johnson to LeFeber. LeFeber's accountant believed that the IRS more likely would accept as legitimate a witnessed POA. LeFeber never filed the POA in the public record. LeFeber testified that he prepared the POA primarily to boost Johnson's self-esteem by providing her with her own source of income.

¶10   LeFeber and Johnson began to search for a house to buy in 1992. They looked in Washington, Idaho, and Montana. LeFeber did not particularly want to move to Montana, but he told Johnson that she could pick out the house that she wanted and he would "buy her a home." LeFeber testified that he meant that he would provide the funds for the purchase. Johnson understood LeFeber to mean that he would gift and convey to her a house and real property.

¶11   Johnson found the house that she wanted in the summer of 1994 in Stevensville, Montana. LeFeber and Johnson both signed the Final Agreement to Buy and Purchase the St. Joseph property for a purchase price of $111,750. The agreement contemplated that the "TITLE HOLDER MAY BE FINALIZED IN TRUST, CORPORATION, TRUSTEE OR NOMINEE, CLOSING AGENT WILL BE NOTIFIED PRIOR TO CLOSING." The District Court determined that "no other intention is or was expressed."

4

¶12 The title company issued its title insurance policy upon the St. Joseph property in the name of "MAGGIE JOHNSON, a single woman as nominee." The Warranty Deed also granted the St. Joseph property to "Maggie R. Johnson, a single woman as nominee." LeFeber had inserted the "single woman as nominee" language before the closing. Johnson testified that LeFeber had inserted the "as nominee" language without her knowledge. Johnson testified that she asked LeFeber several times after the closing about the meaning of the language. LeFeber refused to explain his interpretation of the words "as nominee." LeFeber also would not agree to change the deed to eliminate the words "as nominee." LeFeber testified that he interpreted the terms "nominee" and "agent" as "essentially one and the same." The District Court found that Johnson never had agreed to act as LeFeber's nominee related to the property.

¶13 LeFeber paid for the purchase and all the costs of purchase of the St. Joseph property by a lump sum with a cashier's check. The check identified Johnson as the purchaser of the property. Neither LeFeber nor Johnson ever filed a Gift Tax Return with the IRS.

¶14 LeFeber and Johnson moved into the newly constructed house on the St. Joseph property. The house had an unfinished basement and very little landscaping. Johnson helped with many of the improvements to the house, including finishing the basement, building a deck and a roof on the deck, installing tile flooring, constructing a greenhouse, installing a stove pipe outside and on the roof, and fencing the yard. Johnson also purchased and laid railroad ties, installed a fountain and a pond, and installed and maintained almost all of the landscaping on the property. Johnson planted approximately 50 trees, 200 shrubs, and

over 1,000 perennial bulbs and plants. The District Court determined that Johnson's efforts had increased the value of the St. Joseph property. A September 2005 Competitive Market Analysis estimated the sale price of the St. Joseph property as between $214,900 and $219,900.

¶15 LeFeber paid all of the property taxes on the St. Joseph property from 1994 to 2006. LeFeber insisted that Johnson apply for property tax assistance from 1998 to 2005 pursuant to § 15-6-134, MCA. LeFeber obtained the applications from Ravalli County. LeFeber then prepared the applications and had Johnson sign them. LeFeber signed Johnson's name on the application on at least one occasion. Each signed application represented that Johnson was the sole legal owner of the St. Joseph property. Johnson's acceptance for property tax assistance lowered the property taxes considerably. LeFeber claimed real estate deductions of $1,487 and $1,396 in 2004 and 2005, despite the fact that the property tax bills for those years were $698 and $694 respectively. LeFeber signed a letter to Johnson on December 28, 1999, stating that "[Johnson] has rights to stay at 297 St. Joseph Lane." The letter followed one of the couple's separations.

¶16 LeFeber revoked the POA in 2005 after the relationship ended. Johnson refused LeFeber's request that she sign a quitclaim deed for the St. Joseph property because she believed that LeFeber had gifted her the property. LeFeber filed a petition for a constructive trust pursuant to § 72-33-219, MCA. LeFeber requested that the court declare a constructive trust in favor of LeFeber and order Johnson to convey the St. Joseph property to LeFeber.

Johnson filed a verified response alleging, among other defenses, failure of constructive trust and completed gift.

¶17 The District Court denied LeFeber's claims for a constructive trust and resulting trust. The court also denied Johnson's claim that LeFeber had gifted her the entire St. Joseph property. The court determined that LeFeber and Johnson each had an equitable right as tenants in common to the St. Joseph property and ordered the deed to the property amended accordingly. The court ordered the St. Joseph property partitioned by sale and granted each party an undivided one-half interest as tenants in common. LeFeber appeals and Johnson cross-appeals.

## STANDARD OF REVIEW

¶18 We review a district court's findings of fact in an equitable action to determine whether the findings are clearly erroneous. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, 51 P.3d 486 (citing § 3-2-204(5), MCA); *see also* M. R. Civ. P. 52(a). A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *In re McDermott*, ¶ 22. Substantial credible evidence is that which a reasonable mind could accept as adequate to support a conclusion. We may consider evidence to be substantial even if it is "inherently weak and conflicting." *Baltrusch v. Baltrusch*, 2003 MT 357, ¶ 32, 319 Mont. 23, 83 P.3d 256.

¶19 We do not consider whether evidence would support findings different from those made by the District Court. *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24

7

P.3d 211.  We confine our review to the determination of whether substantial credible evidence supports the findings actually made by the District Court.  *In re Bradshaw*, ¶ 11.  We review a district court's conclusions of law to determine whether those conclusions are correct.  *In re McDermott*, ¶ 22.

### DISCUSSION

¶20    *Did the District Court properly apply equitable doctrines to the division of property held by LeFeber and Johnson?*

¶21    The District Court concluded that equity should govern the division of the St. Joseph property as the unique facts of the case were not unlike a marital estate.  We recently approved a district court's application of equitable doctrines in dividing the property of unmarried cohabitants in *Anderson v. Woodward*, 2009 MT 144, 350 Mont. 343, ___ P.3d ___.  We determined that the district court correctly had applied equitable principles to distribute two real estate properties that the parties had accumulated during their eight-year relationship.  *Anderson*, ¶ 16.  The district court had the power to make compensatory adjustments between the respective parties "according to the ordinary principles of equity."  *Anderson*, ¶ 16.

¶22    An unmarried couple likewise disputed the distribution of property that they had acquired during their relationship in *Flood v. Kalinyaprak*, 2004 MT 15, ¶¶ 5, 10, 15, 319 Mont. 280, 84 P.3d 27.  Flood instituted a partition action after the relationship had ended and brought additional claims, including unjust enrichment and constructive trust.  *Flood*, ¶ 11.  The district court correctly applied equitable doctrines in dividing the assets of the

8

unmarried couple. *Flood*, ¶¶ 17, 21. We described the approach used to divide the property as being "similar to that used to divide a marital estate in a dissolution action." *Flood*, ¶ 20. We also noted that the court "has great flexibility in fashioning appropriate relief for the parties." *Flood*, ¶ 17.

¶23 LeFeber and Johnson acquired the St. Joseph property during their lengthy relationship as unmarried cohabitants. The District Court properly used equitable doctrines to divide the St. Joseph property. *Anderson*, ¶ 16; *Flood*, ¶¶ 17, 21. The District Court had "great flexibility" in fashioning appropriate relief for LeFeber and Johnson using the ordinary principles of equity. *Anderson*, ¶ 16; *Flood*, ¶ 17.

¶24 *Did the District Court correctly determine that LeFeber and Johnson owned the St. Joseph property as tenants in common?*

¶25 LeFeber argues that the District Court should have awarded him sole ownership of the St. Joseph property. LeFeber contends that either a constructive or a resulting trust arose as a matter of law from the 1994 deeded conveyance to Johnson "a single woman as nominee." LeFeber claims that allowing Johnson to retain an ownership interest in the property will cause Johnson to be unjustly enriched. Johnson responds that the District Court should have awarded her sole ownership of the St. Joseph property. Johnson argues that LeFeber had gifted her the St. Joseph property in its entirety.

¶26 A constructive trust arises when an equitable duty requires a person holding title to property to convey it to another on the ground that the person holding title would be unjustly enriched if the person were permitted to retain it. *Monroe v. Marsden*, 2009 MT 137, ¶ 28,

9

350 Mont. 327, ___ P.3d ___ (citing § 72-33-219, MCA). Establishment of a constructive trust depends only upon a showing that the title holder would be unjustly enriched if permitted to retain title. *Monroe*, ¶ 28 (citing *In re Marriage of Moss*, 1999 MT 62, ¶ 29, 299 Mont. 500, 977 P.2d 322). The doctrine of unjust enrichment represents an equitable means of preventing one party from benefitting from his or her wrongful acts and requires a showing of misconduct or fault to recover. *Albinger v. Harris*, 2002 MT 118, ¶ 21, 310 Mont. 27, 48 P.3d 711.

¶27 The party alleging the existence of any trust must establish the trust's validity "by evidence that is clear, convincing and practically free from doubt." *Hilliard v. Hilliard*, 255 Mont. 487, 492, 844 P.2d 54, 57 (1992). The District Court determined that LeFeber had failed to prove by clear and convincing evidence that the 1994 deed created a trust in his favor. The District Court pointed to "the contradictory ownership intentions" manifested by LeFeber. LeFeber vaguely had stated to Johnson before the 1994 purchase that "I'll buy you a home." LeFeber also repeatedly provided vague and misleading explanations to Johnson regarding his use of the words "as nominee" in the 1994 deed. The District Court determined that although the 1991 power of attorney authorized Johnson to act as LeFeber's nominee, neither party had discussed or agreed that Johnson was acting as LeFeber's nominee related to the purchase of the St. Joseph property in 1994.

¶28 The District Court determined that after 1994, LeFeber "overtly engaged in act[s] wholly inconsistent with [Johnson's] role as an agent or nominee holding bare legal title to the St. Joseph property." LeFeber had represented to the Montana Department of Revenue

10

"for seven years running" that Johnson was the sole legal owner of the property. LeFeber had assured Johnson in his 1999 letter that she had "rights" to the property. LeFeber had testified that he was a certified public accountant, currently considered himself a financier, and formerly had served as chief accountant of the Elgin National Watch Company. The court concluded that LeFeber had been "well aware of the difference between a right and a privilege."

¶29 The District Court further concluded that LeFeber had failed to prove unjust enrichment by showing any misconduct or fault on Johnson's part. The District Court noted that the only allegedly wrongful act on Johnson's part was her failure to sign the Quitclaim deed to the St. Joseph property entirely to LeFeber. Johnson had committed no wrongful act in refusing to quitclaim deed the property entirely over to LeFeber, however, due to LeFeber's failure to prove that a trust existed solely in his favor. The District Court emphasized Johnson's extensive labor over the course of eleven years to improve the property as additional evidence that Johnson would not be unjustly enriched by receiving a share of the property.

¶30 Conversely, the District Court determined that Johnson had failed to present sufficient evidence to establish that LeFeber gifted the entirety of the property to her in 1994. LeFeber had inserted the words "as nominee" into the deed rather than placing the deed solely into Johnson's name. LeFeber had refused to answer Johnson's questions about the "as nominee" language. Johnson should have been aware that through the "as nominee" language LeFeber

11

had placed some limitation on her ownership interest. This limitation represented less than a full donative intent on LeFeber's part regarding Johnson's sole ownership of the property.

¶31 The District Court concluded that clear and convincing evidence did establish, however, that LeFeber had gifted to Johnson an undivided interest in the property. The District Court pointed to LeFeber's statement that he would buy Johnson a home, the fact that he had refused to clarify any limitations he placed on the words "as nominee," and his statement to Johnson that she had "rights" to the property. The court also emphasized the fact that LeFeber effectively had "represented to the rest of the world that [Johnson] was the sole legal and equitable owner" of the St. Joseph property. The District Court concluded that LeFeber's actions were most consistent with an objective view that he had placed the words "Maggie R. Johnson, a single woman" on the deed to assure Johnson that she had rights in the property, and that he had included the words "as nominee" in the deed to reserve some rights to himself.

¶32 The District Court entered detailed and specific findings regarding LeFeber's and Johnson's actions as they related to the St. Joseph property. The court correctly applied equitable principles based on those findings. *Anderson*, ¶ 16; *Flood*, ¶¶ 17, 21. Substantial credible evidence supports the District Court's determination that neither LeFeber nor Johnson owned the St. Joseph property in its entirety. *In re McDermott*, ¶ 22. The District Court correctly determined that LeFeber and Johnson each had an equitable right as tenants in common to the St. Joseph property.

12

¶33 *Did the District Court correctly partition the St. Joseph property by granting LeFeber and Johnson each an undivided one-half interest in the property?*

¶34 LeFeber argues that the law of partition and the relevant evidence entitle Johnson to "at best, a minimal interest in the property." LeFeber contends that a clear preponderance of the evidence establishes that he "contributed vastly more to the value of the property, arguably over 90 percent." LeFeber points to his payment of the entire purchase price of the St. Joseph property, his payment of the monetary costs of improving the property, and his payment of all the property taxes associated with the property.

¶35 The district court possesses "great flexibility" in fashioning appropriate relief for the parties in a partition action. *Anderson*, ¶ 16; *Flood*, ¶ 17. The district court has the power to make compensatory adjustments between the respective parties according to the ordinary principles of equity. *Anderson*, ¶ 16; *Flood*, ¶ 21 (citing § 70-29-209(2), MCA). Partition actions should be fashioned to cause the least degree of harm to the cotenants and to confer no unfair advantage on any one cotenant. *Anderson*, ¶ 16; *Flood*, ¶ 21.

¶36 A rebuttable presumption exists that joint tenants own equal shares of the property. *Anderson*, ¶ 17; *Flood*, ¶ 28; *Rausch v. Hogan*, 2001 MT 123, ¶ 24, 305 Mont. 382, 28 P.3d 460 (citing *Matter of Estate of Dern Family Trust*, 279 Mont. 138, 151-52, 928 P.2d 123, 131 (1996). The District Court considered extensive evidence and testimony from LeFeber and Johnson regarding the parties' relationship, their conduct over the years, their labor toward improving the property, payment of taxes, correspondence between the parties, and LeFeber's representations to governmental agencies and other third parties. *See Anderson*,

13

¶ 25; *Flood*, ¶¶ 23-28. The District Court rejected LeFeber's contribution argument as LeFeber had "delivered a portion of his contribution to [Johnson] as a gift."

¶37    The District Court concluded that the evidence clearly established that LeFeber and Johnson owned the St. Joseph property equally. The District Court properly considered "all relevant evidence" in considering whether LeFeber had gifted a portion of the property to Johnson. *Flood*, ¶ 23. Our review of the record convinces us that substantial credible evidence supports the District Court's partition of the property. We do not believe that the District Court misapprehended the effect of the evidence. *In re McDermott*, ¶ 22. The District Court fashioned its partition of the St. Joseph property "to cause the least degree of harm to the cotenants and to confer no unfair advantage on any one cotenant." *Flood*, ¶ 21. The District Court properly exercised its power to make compensatory adjustments and fashion appropriate relief for LeFeber and Johnson according to the ordinary principles of equity. *Anderson*, ¶ 16; *Flood*, ¶¶ 17, 21; § 70-29-209(2), MCA.

¶38    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

14