DA 09-0493

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 74

DENNIS DESCHAMPS,

      Plaintiff and Appellant,

  v.

TREASURE STATE TRAILER COURT, LTD.,
and DENNIS RASMUSSEN, as Personal Representative
of the Estate of Larry R. Rasmussen,

      Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV 2006-394
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Quentin M. Rhoades, Nathan G. Wagner, Sullivan, Tabaracci & Rhoades,
Missoula, Montana

      For Appellee:

            James C. Bartlett, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  March 17, 2010

Decided:  April 13, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Dennis Deschamps (Deschamps) purchased a mobile home trailer park (Park) from Larry Rasmussen, now deceased. Deschamps later discovered serious problems with the Park's water supply system. He sued Rasmussen's estate (Estate) for negligent misrepresentation and breach of contract. After the Estate filed its Answer and discovery was underway, Deschamps moved for leave to amend his Complaint in order to allege fraud and constructive fraud. The Eighth Judicial District Court denied his motion, and ultimately entered a final judgment, as further explained below. Deschamps appeals. We affirm.

**ISSUES**

¶2 A restatement of Deschamps' issue on appeal is:

¶3 Did the District Court abuse its discretion by denying his motion to amend his Complaint?

¶4 The Estate presents the following issue on cross-appeal:

¶5 After a previously-entered injunction was dissolved, did the District Court err by failing to compel Deschamps to pay the amount the Estate claimed it was due?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 In April 2003, Deschamps and Larry Rasmussen entered into a written Commercial Buy-Sell Agreement (Agreement) drafted by Deschamps' real estate broker, under which Deschamps purchased a Great Falls mobile home trailer park with ninety-six residential spaces from Rasmussen. Of the $1,625,000 purchase price, Deschamps paid

2

$2,000 in earnest money. The parties agreed that the remaining balance would be paid in part by cash at closing and the remainder via monthly payments to Rasmussen.

¶7 In May 2003, in response to Deschamps' expressed concern over the condition of the property, the parties renegotiated the purchase price and executed a written addendum to the Agreement lowering the price to $1,445,000 but retaining the remaining original terms. While not reflected in the Agreement or addendum, Deschamps claimed that Rasmussen also agreed to transfer ownership of two mobile homes Rasmussen personally owned to Deschamps. Additionally, Deschamps asserted that Rasmussen retained ownership of fourteen trailer units within the Park, and was required to pay rent to Deschamps for those units until such units were removed. The parties closed on the transaction on May 23, 2003. On June 10, 2003, Larry Rasmussen died, and on July 2 the court appointed Dennis Rasmussen as the Estate's personal representative.

¶8 In mid-July 2003, a water system well pump failed and Deschamps replaced it. He claims that he began learning at that time that the tenants had been complaining of poor water quality and little, or no, water pressure for some time. In fall 2003, Deschamps hired a consultant, Nash Enterprises, to drain and clean the storage tank for the water system. The consultant discovered that the water supply system serving the Park was defective and "structurally unfit for pressurization." In December 2003, Deschamps submitted written notice to the Estate of "claims against the estate."

¶9 In May 2004, Deschamps excavated a portion of the underground water distribution system. He discovered that some of the materials used to construct the system were improper and inadequate for the water distribution needs of the Park. He

3

then hired Neil Consultants to evaluate the entire water system. In August 2004, Neil Consultants recommended extensive remedial measures to correct the problems with the water system, at an estimated cost of $400,000. Deschamps thereafter began making small upgrades to the system.

¶10 Between 2003 and 2005, Deschamps made all the monthly payments required by the Agreement. After making only three monthly payments in 2006, however, Deschamps stopped making payments, stating that much of the monthly payment was required to keep the Park operating and to pay for additional remedial projects. In March 2006, Deschamps filed a complaint against the Estate alleging that Rasmussen negligently misrepresented the quality and condition of the water system. Deschamps also presented two breach of contract claims—one alleging that Rasmussen's personal mobile units were never transferred to Deschamps but were instead removed from the Park by the Estate, and the other for failure of Rasmussen to pay rent on the fourteen units to which he retained ownership.

¶11 In May 2006, the same well pump that Deschamps had replaced in July 2003 failed again and Deschamps hired Pat Byrne Drilling to replace it. Deschamps claims Byrne told him that Larry Rasmussen had extended that particular well in April 2002 but had refused to extend the well casing as recommended by Byrne. The purposes of extending the casing would have been to minimize particulate in the water and avoid damage to the pumps.

¶12 In February 2007, the Estate recorded a Notice of Trustee's Sale indicating that the Park would be sold at auction on June 29, 2007, as a result of Deschamps' failure to

4

make monthly payments. In May 2007, Deschamps sought an injunction precluding the Estate from taking action to foreclose against him. The District Court granted Deschamps' request for a Temporary Restraining Order in June 2007 and, in July, granted his request for a preliminary injunction, thereby enjoining the foreclosure. To provide security to the Estate, Deschamps filed an irrevocable letter of credit in the amount of $67,000 made payable to Dennis Rasmussen and Rasmussen's attorney, James Bartlett. The letter of credit dollar figure represented the amount by which Deschamps was in arrears on payments to the Estate, plus interest accrued, to June 2007. The letter of credit was payable upon demand by both parties and order of the court.

¶13 Also in June 2007, Deschamps moved for leave to file his first amended complaint. The court denied his motion on procedural grounds. For reasons not pertinent to this appeal, in December 2007 the District Court vacated its earlier order denying Deschamps' motion to amend and issued a new order granting Deschamps' motion in part and denying it in part. Deschamps declined to file an amended complaint and requested a trial on the merits.

¶14 Following cross-motions for summary judgment, the court granted partial summary judgment to the Estate on Deschamps' negligent misrepresentation claim and his breach of contract claim as it pertained to Rasmussen's personal trailers. Deschamps withdrew his remaining breach of contract claim for unpaid rent just before the jury trial began. The order also denied Deschamps' motion for partial summary judgment, postponed a decision on the Estate's request to dissolve the injunction, and instructed

5

Deschamps that he could move to file an amended complaint stating a claim for negligent non-disclosure of latent defects to the water system.

¶15    In June 2008, Deschamps filed his amended complaint. The matter proceeded to a jury trial held April 27–30, 2009. By special verdict, the jury ruled on the only remaining issue, concluding that Larry Rasmussen did not negligently fail to disclose latent material defects in the Park's water distribution system for the Park before selling it to Deschamps. On May 7, 2009, the Estate moved to dissolve the injunction and compel payment by Deschamps of all monthly installments accruing since June 2007, plus costs and attorney fees. The court dissolved the injunction immediately. Following a subsequent hearing, the court ordered payment of the $67,000 letter of credit to the Estate and James Bartlett. It declined, however, to grant the Estate's request that Deschamps pay the remaining monthly installments that, but for the injunction, would have been due from June 2007 to May 2009, in the approximate sum of $167,000.

¶16    In September 2009, Deschamps filed a timely appeal from the District Court's December 2007 rejection of various proposed claims set forth in Deschamps' June 2007 First Amended Complaint. The Estate filed a timely cross-appeal of the court's rejection of its motion to order Deschamps to pay the amount the Estate claimed it was owed. Deschamps also moved the District Court for an injunction pending appeal prohibiting the Estate from foreclosure attempts. The District Court granted this motion and waived the requirement for a bond.

**STANDARD OF REVIEW**

6

¶17    We note the parties disagree on the proper standard of review for this case.  The Estate argues that we review a district court's denial of a M. R. Civ. P. 15 (Rule 15) motion to amend for an abuse of discretion.  Deschamps argues that we should look to the precise ruling of the District Court in this case, i.e., a ruling that particular amendments to his complaint were futile, and that we review such a legal conclusion de novo.

¶18    It is well established that we review the denial of a motion to amend for an abuse of discretion.  *Wormall v. Reins*, 1 Mont. 627, 630 (1872) ("The court may, in furtherance of justice and upon such terms as are just, allow the amendment of any pleading at any stage of a proceeding.  This power is a discretionary one, and this court cannot review the exercise of the same.  Unless there has been some abuse of that discretion, courts have frequently permitted pleadings to be amended even after verdict and judgment to correspond with the proofs in the case . . . .").  *See also Callan v. Hample*, 73 Mont. 321, 326, 236 P. 550, 551-52 (1925) ("The matter of an amendment of a pleading, at any time, rests within the sound discretion of the trial court, and its action will not be reversed in the absence of an affirmative showing of abuse of that discretion resulting in prejudice.").  In addition, *see Hobble-Diamond Cattle Co. v. Triangle Irrigation Co.*, 249 Mont. 322, 325, 815 P.2d 1153, 1155-56 (1991) ("Although leave to amend is properly denied when the amendment is futile or legally insufficient to support the requested relief, it is an abuse of discretion to deny leave to amend where it cannot be said that the pleader can develop no set of facts under its proposed amendment that would entitle the pleader to the relief sought."), and *Emanuel v. Great Falls Sch. Dist.*, 2009 MT 185, ¶ 9, 351 Mont. 56,

7

209 P.3d 244 ("We review a district court's discretionary rulings, including denial of a motion to amend a complaint, for abuse of discretion.").

¶19 Recently, in *Citizens Awareness Network v. Mont. Bd. of Env. Review*, 2010 MT 10, 355 Mont. 60, ___ P.3d ___ (Cotter, J., dissenting), we applied a de novo standard of review to the district court's denial a M. R. Civ. P. Rule 15 motion to amend a claim. However, *Citizens Awareness* has no application here. In that case, the district court had to determine whether, under M. R. Civ. P. 15(c) (Rule 15(c)), an amended claim arose out of the same transaction or occurrence as the claims in the original pleading. Relying on *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004), we concluded that such a determination was a legal question to be reviewed de novo. Conversely, the case before us raises only the application of Rule 15(a) which, as noted above, has historically been reviewed for an abuse of discretion.

## DISCUSSION

¶20 *Did the District Court abuse its discretion by denying Deschamps' motion to amend his complaint?*

¶21 As noted above, Deschamps' original complaint set forth a claim for negligent misrepresentation relating to the condition of the water system and two claims for breach of contract, i.e., failure to deliver property and failure to pay rent. In 2007, Deschamps moved to amend his complaint to restate his three original claims and to assert five new claims, namely: (1) negligent misrepresentation as to the profitability of the Park, (2) breach of the implied covenant of good faith and fair dealing as to both the condition of the water system and the profitability of the Park, (3) constructive fraud, (4) actual fraud,

8

and (5) a declaratory judgment on all counts. The Estate challenged the motion arguing variously that, under the parol evidence rule, the two-year statute of limitations for fraud, the statute of frauds, and the estate claims limitations, Deschamps' claims were futile as a matter of law.

¶22   The District Court, after careful analysis, ruled that the parol evidence rule applied to the following water system related claims: (1) negligent misrepresentation, (2) breach of the implied covenant of good faith, (3) constructive fraud, and (4) actual fraud. Additionally, the court concluded that the two-year statute of limitations on fraud claims, § 27-2-203, MCA, applied to Deschamps' constructive and actual fraud claims. The court determined further that the applicable statute of frauds, § 30-2-201(1), MCA, rendered Deschamps' breach of contract claim for failure to deliver property futile. And lastly, the court concluded that Deschamps' claim for declaratory judgment did not state a proper claim for declaratory relief under M. R. Civ. P. 12(b)(6) or 12(c) (Rule 12). The District Court granted Deschamps the limited right to amend his complaint to allege negligent misrepresentation as to the profitability of the Park, breach of implied covenant of good faith and fair dealing as to profitability, and breach of contract for failure to pay rent. As indicated above, however, Deschamps elected not to further amend his complaint; rather, he proceeded to trial and now appeals certain aspects of the District Court's ruling on his motion to amend.

¶23   *Parol Evidence Rule*

¶24   We first review the District Court's analysis, application and ruling on the parol evidence rule.

9

¶25    The parol evidence rule, codified at § 28-2-904, MCA, states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." The District Court determined this rule precluded Deschamps' claims for (1) negligent misrepresentation of the water system's condition, (2) breach of implied covenant of good faith and fair dealing as to the condition of the water system, and (3) both fraud claims pertaining to the water system. The court ruled that the Agreement and subsequent written addendum to the Agreement memorialized the parties' buy/sell transaction and Deschamps could not introduce evidence of oral agreements or statements ostensibly made by Rasmussen that were not included in the Agreement. Therefore, Deschamps was not allowed to claim that Rasmussen told him the water system was in "good" or "fine" condition, when Rasmussen, according to Deschamps, knew that was untrue. Deschamps also was constrained from testifying that Rasmussen claimed the Park had at least 90% occupancy with a low turnover rate.

¶26    In its legal analysis, the court referenced several relevant clauses in the Buy-Sell Agreement upon which it relied. Without repeating lengthy portions of the Agreement, it is undisputed that the Agreement provided: (1) that Rasmussen had not conducted an inspection and did not warrant the property's condition, (2) Deschamps had the right and obligation to inspect the property prior to purchase, (3) a special disclaimer of reliance on any assurances given by Rasmussen as to the condition of the property, (4) an inspection contingency waiver provision that indicated the inspection was satisfied or waived, (5) a merger clause specifying that the Agreement was the entire agreement and superseded

10

any oral agreements between the parties, and (6) that the Agreement could only be amended in writing. The District Court, relying primarily but not exclusively on *Sherrodd, Inc. v. Morrison-Knudsen Co.*, 249 Mont. 282, 815 P.2d 1135 (1991), noted that Deschamps had signed a contract prepared by *his* real estate agent that contained an unequivocal statement that Deschamps had not relied "upon any assurances by . . . the Seller as to the condition of the property . . . ." The court concluded that Deschamps, by claiming Rasmussen had misled him as to the condition of the water supply system, was now arguing that he *had* relied, to his detriment, on Rasmussen's assurances. This argument was a direct contradiction to the express content of the contract and therefore was precluded under the parol evidence rule.

¶27 Deschamps argues on appeal, as he did to the District Court, that despite the merger clause and the various disclaimers contained in the Agreement, the oral statements he wished to present were admissible because they did not contradict the terms of the written contract and they were offered *not* to show breach of contract but to prove fraud in the inducement, an exception to the parol evidence rule. Section 28-2-905(2), MCA. Deschamps asserts that Rasmussen's alleged fraudulent statements were made to induce him to buy the Park.

¶28 It is well established that when the language of a contract is clear and unambiguous, we are "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-4-101, MCA. Here, the contract drafted by Deschamps and presented to Rasmussen for signature clearly and expressly stated that Deschamps did not rely on any oral assurances

11

or representations by Rasmussen. Deschamps cannot now claim otherwise. Therefore, in that his allegations of reliance on alleged fraudulent statements specifically contradict the language of the Agreement, consideration of them is barred under the parol evidence rule. As noted by the District Court, *Sherrodd* supports this holding.

¶29 In *Sherrodd*, Sherrodd, a subcontractor, toured a building site in preparation for submitting an earth moving bid. While at the building site, a representative of the general contractor (Sherrodd was bidding to work for another subcontractor, not the general contractor) told Sherrodd that the job involved moving 25,000 cubic yards of material. *Sherrodd*, 249 Mont. at 283, 815 P.2d at 1135. Based upon this quantity representation, Sherrodd submitted a bid and won the job. Subsequently, and before the contract was signed, Sherrod learned that the job required moving much more than 25,000 cubic yards of soil. However, an officer of the subcontractor who had hired Sherrodd told Sherrodd that "a deal would be worked out wherein Sherrodd would be paid more than the sum provided for in the contract." As a result of this representation, Sherrodd signed the contract. *Sherrodd*, 249 Mont. at 284, 815 P.2d at 1136. When a "deal" was not worked out, Sherrodd sued, claiming actual and constructive fraud, and breach of the covenant of good faith and fair dealing. The defendants (general contractor and hiring subcontractor) prevailed on summary judgment, the court ruling that Sherrodd would not be permitted to introduce the verbal representations that directly contradicted the terms of the written contract. The *Sherrodd* Court, acknowledging that Sherrodd was trying to introduce the oral statements to prove fraud in the inducement, stated that the "exception only applies when the alleged fraud does not relate directly to the subject of the contract. Where an

12

alleged oral promise directly contradicts the terms of an express written contract, the parol evidence rule applies." *Sherrodd*, 249 Mont. at 285, 815 P.2d at 1137. *See also Continental Oil Co. v. Bell*, 94 Mont. 123, 21 P.2d 65 (1933) and *Dannan Realty Corp. v. Harris*, 157 N.E. 2d 597 (N.Y. 1959).

¶30     Deschamps argues the applicability of *Jenkins v. Hillard*, 199 Mont. 1, 647 P.2d 354 (1982) but we find *Jenkins* both factually distinguishable and unsupportive of Deschamps' claim. Therefore, we conclude that the Agreement contained multiple written terms which preclude Deschamps from now claiming that Rasmussen made oral representations upon which he relied to his detriment. For these reasons, we conclude the District Court did not abuse its discretion in holding that the parol evidence rule precluded Deschamps' claims of negligent misrepresentation and breach of good faith and fair dealing pertaining to the condition of the Park's water system.

¶31     Because we conclude below that Deschamps' remaining claims for fraud are barred by an expired statute of limitations, we do not address them here.

¶32     *Statute of Limitations*

¶33     We now turn to the court's ruling on the statute of limitations. No allegation of fraud was included in Deschamps' original complaint; therefore, his proposed claims for actual and constructive fraud were new claims subject to the applicable statute of limitations codified at § 27-2-203, MCA. This statute requires that an action for fraud must be commenced within two years after the claim accrues. A claim accrues when all the elements of the claim exist or have occurred. Section 27-2-102, MCA. The question here is when Deschamps discovered, or reasonably should have discovered, the facts

13

allegedly establishing the alleged fraud as to profitability of the Park and the condition of the water system.

¶34 From Deschamps' own pleadings, it is apparent that within six months of the May 23, 2003 closing on the sales transaction, the Park had lost one-half of the occupants who had been tenants at the time of closing. Deschamps claims these tenants left out of dissatisfaction with the Park's problematic water system. Upon realizing just six months after closing that the Park was not enjoying a consistent 94% occupancy rate as Deschamps claims Rasmussen alleged, Deschamps' claim for fraud accrued. Therefore, if 50% of the tenants vacated by December 2003, Deschamps had no later than December 2005 within which to bring his fraud causes of action. He did not move to amend his complaint to allege fraud until 2007; therefore, his proposed fraud claims were untimely as a matter of law.

¶35 Deschamps also claims that he did not discover the full extent of the latent problems with the Park's water system until the spring of 2004 when his hired engineer unearthed the underground portion of the system. He therefore argues that any claims pertaining to fraudulent misrepresentation of the condition of the water system accrued at that time. Again, the pleadings in the case reveal that Deschamps first became aware of problems with the system in July 2003. Acknowledging that the failure of one water pump may not be adequate to trigger a claim for fraudulent misrepresentation, we note that by the fall of 2003, Deschamps had been advised by a consultant that the water system "was seriously and dangerously defective." Deschamps notified the Estate in December 2003 of claims against the Estate pertaining to the quality and condition of the

14

water system. Again, this evidence shows that Deschamps' fraud claim accrued no later than December 2003 and had to be filed by December 2005. His 2007 claims therefore fail.

¶36 *Statute of Frauds and Rule 12—Declaratory Judgment*

¶37 The District Court also concluded that Deschamps' breach of contract claim alleging Rasmussen's/Estate's failure to convey Rasmussen's personal mobile units was futile in that he failed to establish the existence of a written contract, as required by § 30-2-201, MCA, under which Rasmussen had the obligation to convey such property. The court further determined that Deschamps was not entitled to declaratory relief under M. R. Civ. P. Rule 12. Deschamps does not present arguments on appeal challenging either of these rulings, and therefore we will not disturb them.

¶38 Based on the foregoing, we conclude the District Court did not abuse its discretion in denying Deschamps' motion to amend his complaint.

¶39 We next address the Estate's counter-claim.

¶40 *After a previously-entered injunction was dissolved, did the District Court err by failing to compel Deschamps to pay the amount of back monthly payments the Estate claimed it was due?*

¶41 As indicated above, the Estate initiated a non-judicial foreclosure against Deschamps in 2007. A non-judicial foreclosure may occur when a trust deed or mortgage deed provides that the beneficiary—in this case the Estate—may sell the property in the event the grantor—Deschamps—defaults on the deed. As its name implies, a non-judicial foreclosure can be completed outside the court system and is generally less expensive and time-consuming than a judicial foreclosure. Conversely, a

15

judicial foreclosure requires that the beneficiary undertake a legal proceeding in the event the grantor defaults.

¶42 In this case, the Trust Indenture under which Deschamps secured financing allowed the Estate to issue a Notice of Trustee Sale if Deschamps defaulted. After the Estate recorded the Notice of Trustee Sale, foreclosure proceedings were stayed by the issuance of an injunction. *See* Opinion, ¶ 12. When the injunction was ultimately lifted following trial, the Estate moved the court to use its equitable and contempt powers to compel Deschamps to pay the amount necessary to bring the unpaid monthly installments current, or go to jail if he refused to do so. The court declined, explaining that the Estate was entitled to the amount provided as security at the time the injunction was issued ($67,000) and that the Estate could resume its non-judicial foreclosure proceedings, or initiate judicial foreclosure proceedings, for further remedy. By this ruling, the court explained, it returned both parties to the positions they held at the time the injunction was issued rather than putting the Estate in a better position. The Estate appeals the District Court's ruling.

¶43 We review a district court's equitable rulings under § 3-2-204(5), MCA, which provides, "In equity . . . matters . . . the supreme court shall review all questions of fact arising upon the evidence presented in the record . . . as well as questions of law . . . ." Among other rulings, this statute has been employed to review a district court's equitable decision to award attorney fees (*Zier v. Lewis*, 2009 MT 266, ¶ 14, 352 Mont. 76, 218 P.3d 465); refusal to apply the doctrine of laches (*Edwards v. Cascade County*, 2009 MT 229, ¶ 32, 351 Mont. 360, 212 P.3d 289); and division of property upon an unmarried

16

couple's dissolution (*LeFeber v. Johnson*, 2009 MT 188, ¶ 18, 351 Mont. 75, 209 P.3d 254). We concluded in these cases that our duty was to determine whether the facts upon which the district court relied were clearly erroneous and whether its conclusions of law were correct.

¶44 Although neither party cites this statute, the provisions of § 71-1-232, MCA, are arguably germane to this issue. The Estate asked the District Court to invoke its equitable powers to award it all past due payments, while also intending to foreclose upon the property. The court concluded that the parties should be returned to the positions they occupied at the time the injunction was issued, which was at the point of the Trustee Sale. Here, because the Estate as the Seller financed the sale of the property to Deschamps, it was acting in the capacity of a purchase money mortagee. As such, it would not be entitled under the law to a deficiency judgment upon the foreclosure of the property. Section 71-1-232, MCA. *See also Farm Credit Bank of Spokane v. Hill*, 266 Mont. 258, 267, 879 P.2d 1158, 1163 (1993). This being the case, we cannot conclude that the District Court erred in releasing the bond and returning the parties to the Trustee Sale position, but refusing to grant to the Estate what would in essence have constituted a deficiency recovery over and above the possession of the property.

¶45 While in the exercise of its equitable power to make a party whole, the District Court may have reached another conclusion—one that may have been more beneficial to the Estate—this does not mean that the court's refusal to invoke its equitable powers in such fashion was erroneous or reversible. It is well established that we consider whether the evidence presented supports a district court's findings, not whether it supports

17

different findings.  *LeFeber*, ¶ 19. We conclude that the record and the law support the court's ruling.  Therefore, we decline the Estate's insistence that we "must fashion a remedy" to suit its needs.

## CONCLUSION

¶46    For the foregoing reasons, we  affirm the  District  Court's  rulings  denying Deschamps' motion to amend his complaint  and  rejecting  the  Estate's  request  for equitable and contempt relief.


/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART