FILED

November 14 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0201

DA 14-0201

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 300

GLORIA BILESKY,

        Plaintiff and Appellant,

   v.

SHOPKO STORES OPERATING CO., LLC,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and For the County of Flathead, Cause No. DV 11-1356(D)
                      Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Stephanie C. Kucera, Buxbuam, Daue & Fitzpatrick, PLLC;
                Missoula, Montana

        For Appellee:

                W. Adam Duerk, Dylan McFarland, Milodragovich, Dale &
                Steinbrenner, P.C.; Missoula, Montana

                          Submitted on Briefs:  October 21, 2014
                                  Decided:  November 14, 2014

Filed:

                                   _____
                                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Gloria Bilesky appeals from the order of the Eleventh Judicial District Court, Flathead County, denying her motion to present to the jury factual statements Appellee made in a written brief to the District Court.

¶2 The issue on appeal is whether factual statements Appellee made in a brief were judicial admissions, and thus should have been presented to the jury as uncontested facts.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On January 30, 2011, Appellant Gloria Bilesky entered Appellee Shopko Stores Operating Co.'s (Shopko) Kalispell store and fell. Bilesky left the store without reporting the incident. The next day, Bilesky called Shopko and reported the incident to Shopko's manager, Michael Beard. After speaking with Bilesky, Beard reviewed video from the store's surveillance cameras with the employee in charge of loss prevention, Jonathan Kempff. Knowing that the surveillance system only retained footage for two to five weeks, after which it would be automatically overwritten, Beard instructed Kempff to copy footage showing Bilesky's fall to a DVD for preservation. Kempff recorded footage to a DVD and sent it to the claims adjuster, Gallagher Bassett Services (Gallagher Bassett).

¶4 Bilesky retained counsel to represent her regarding the fall. Bilesky's attorney requested a copy of the video footage from Gallagher Bassett on February 11, 2011, but never received it. Bilesky's attorney continued to request the footage from Gallagher Bassett over the next few months, but Gallagher Bassett refused to provide any information regarding the claim without a court order.

2

¶5    Bilesky filed suit November 3, 2011, alleging Shopko failed to maintain its premises in a reasonably safe condition, which caused Bilesky's fall and injury. In February 2012, Bilesky sent her first set of discovery requests to Shopko, in which she requested all photos, videos, or other material depicting the January 30, 2011 fall. Shopko responded: "No photographs were taken and no video or audio recordings or other data retained." In July 2012, Shopko's attorney wrote to Bilesky's attorney to explain that the footage of Bilesky's fall had been accidentally recorded over. Subsequent investigation by Bilesky revealed that Kempff had recorded footage to DVD; however, the footage was from the day after Bilesky's fall, and from the wrong cameras.

¶6    Bilesky filed a motion for sanctions based on Shopko's spoliation of the video footage. In her brief, Bilesky argued that destruction of the video unfairly disadvantaged her because the video would have given objective evidence of highly probative facts. Bilesky then listed which facts she believed the video would have shown:

- no maintenance had been done for an extended period prior to Gloria's fall,
- the caution, wet floor signs were not out,
- the carpets were saturated with water,
- no employee had even checked the area for at least 35 minutes,
- Gloria's pants were visibly wet,
- she wiped her wet hands on her clothes,
- she fell forward, hard, landing on her hands and knees,
- she needed assistance getting up,
- she got up slowly and was in visible pain/discomfort, and
- her gait was altered after falling.

Bilesky requested that the court sanction Shopko either by granting default judgment, or by giving a negative inference jury instruction and precluding Shopko from raising comparative negligence as a defense.

3

¶7     Shopko responded to Bilesky's motion (Response Brief), arguing that the motion should be denied in its entirety because the accidental spoliation was not an abuse of discovery, and Shopko should not be sanctioned in the absence of an abuse of discovery. In its Response Brief, Shopko argued that the loss of the video resulted in no unfair advantage to Shopko:

> Even if this court is inclined to rule otherwise, the loss of the video has resulted in no prejudice to Plaintiff or unfair advantage to Shopko.  In fact, if anything, the loss of the video creates more prejudice for Shopko than Plaintiff.

Shopko then reinforced its argument that there was no unfair advantage by pointing out that it agreed with most of Bilesky's contentions about what the video would have shown, stating:

> Furthermore, the Parties substantially agree on what the video would have shown. Plaintiff sets out in her brief what the video would have shown:
> - Gloria's pants were visibly wet;
> - She wiped her wet hands on her clothes, she fell forward, hard, landing on her hands and knees;
> - She needed assistance getting up, she got up slowly and was in visible pain/discomfort; and
> - Her gait was altered after falling.
>
> Defendant will not disagree with these points.  Eyewitness testimony and company records show what occurred on the day of Plaintiff's fall.

Shopko then noted it disagreed with Bilesky's other contentions about what the video showed, stating:

> However, several other points Plaintiff claims the video would have shown is [sic] inaccurate based on eyewitness accounts.  Those points are:
> - The caution wet floor signs were not out;
> - The carpets were saturated with water;
> - No employee had even checked the area for at least 35 minutes; and

4

- No maintenance had been done for an extended period prior to Gloria's fall.

These points remain in dispute.

¶8 Based on Shopko's representations in its Response Brief that it agreed with certain of Bilesky's contentions regarding the contents of the video, Bilesky requested in her trial brief that those facts about which Shopko stated it "will not disagree" be read to the jury. Bilesky's request pertained only to those facts that preceded Shopko's statement, "Defendant will not disagree with these points." Her request did not include any of the facts about which Shopko had stated, "These points remain in dispute." In an ensuing email between counsel for the parties, Shopko objected to Bilesky's request. Bilesky supplemented her trial brief in order to address Shopko's objection, arguing Shopko's statements in its Response Brief were judicial admissions.

¶9 At trial, the District Court orally denied Bilesky's request that the statements in Shopko's Response Brief be read to the jury, holding the statements were not judicial admissions. Later in the trial, the District Court allowed Shopko to present testimony contradicting the statements and limited Bilesky's cross examination of witnesses regarding the statements. Bilesky appeals the District Court's determination that Shopko's statements were not judicial admissions, and the resulting denial of her request to introduce the statements into evidence.

**STANDARD OF REVIEW**

¶10 Whether a statement constitutes a judicial admission depends upon the circumstances of each case. *Weaver v. State*, 2013 MT 247, ¶ 19, 371 Mont. 476, 310 P.3d 495 (citing *Kohne v. Yost*, 250 Mont. 109, 113, 818 P.2d 360, 362 (1991)). Whether

a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law we review for correctness. *Weaver*, ¶ 19 (citing *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 75, 358 Mont. 474, 247 P.3d 244). A district court's determination of whether a statement constitutes a judicial admission is reviewed for an abuse of discretion. *Weaver*, ¶ 19. The district court's discretion in this regard is not unlimited, however. *See Cox v. Myllymaki*, 231 Mont. 320, 322, 752 P.2d 1093, 1094 (1988) (trial courts' discretion is not unlimited).

**DISCUSSION**

¶11 *Whether factual statements Appellee made in a brief were judicial admissions, and thus should have been presented to the jury as uncontested facts.*

¶12 A judicial admission is an express waiver made to the court by a party or its counsel "conceding for the purposes of trial the truth of an alleged fact." *Kohne*, 250 Mont. at 112, 818 P.2d at 362 (quoting 9 John Henry Wigmore, *Evidence in Trials at Common Law*, § 2588, 821 (Chadbourn rev. 1981)). Judicial admissions have the effect of stipulations, and were previously referred to as such. Wigmore at § 2588, 821. The main characteristic of a judicial admission is the conclusive effect upon the party making the admission; no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact. *Kohne*, 250 Mont. at 112, 818 P.2d at 362 (citing Wigmore at § 2590, 823). Statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court. *Weaver*, ¶ 19. This is so, in part, because "[a] written document, filed with a district court and signed by either the party or the party's attorney, is assumed to be, to the best of the signer's

6

knowledge, information, and belief formed after reasonable inquiry well-grounded in fact . . . as required by M. R. Civ. P. 11." *In re Marriage of Hart*, 2011 MT 102, ¶ 16, 360 Mont. 308, 258 P.3d 389 (internal quotations and ellipses omitted). To determine whether a statement is a judicial admission depends upon the circumstances of each case. *Kohne*, 250 Mont. at 112, 818 P.2d at 362 (citations omitted).

¶13 A review of our case law evinces the following criteria must all be met in order for a statement to constitute a judicial admission:

1) There must be a statement made to the court. The statement can be made at any stage of the proceedings. *See Kohne,* 250 Mont. at 112, 818 P.2d at 362 ("[judicial admissions] may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments"). Statements made outside the litigation proceedings are not made to the court, and thus cannot be judicial admissions. *See In re Estate of Hill*, 281 Mont. 142, 150, 931 P.2d 1320, 1325 (1997) (an inventory and appraisement of an estate was not a judicial admission because it was not made in the course of litigation proceedings).

2) The statement must be made by a party, or the party's attorney. *See Hart*, ¶ 16 (response brief and proposed findings of fact signed by attorney and conceding former spouse was current on child support were judicial admissions).[1]

3) The statement must be a statement of fact, and not a statement of opinion or law. *See DeMars v. Carlstrom*, 285 Mont. 334, 338, 948 P.2d 246, 249 (1997) (defendant's testimony that automobile accident was all her fault was not a judicial admission because it was either a legal conclusion, or the expression of her personal opinion).

---

[1] Issues of judicial admissions usually arise in regard to statements of attorneys. Issues of judicial admissions made directly by a party usually occur in the context of testimony, particularly cross-examination. *See DeMars*, 285 Mont. at 338, 948 P.2d at 249; *In re Raymond W. George Trust*, 1999 MT 223, ¶¶ 38-39, 296 Mont. 56, 986 P.2d 427. While we found in both those cases that the statements were not judicial admissions because they were not statements of fact, we later determined that, when an alleged judicial admission occurs in a party's testimony, a five-part test must be met before it may be held a judicial admission. *Conagra, Inc. v. Nierenberg*, 2000 MT 213, ¶ 45, 301 Mont. 55, 7 P.3d 369.

¶14    The three elements listed above provide a threshold determination of whether a statement may be considered a judicial admission; a determination which we review for correctness. *See Weaver*, ¶ 19 ("Whether a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law."); s*ee also In re Estate of Hill*, 281 Mont. at 150, 931 P.2d at 1325 (district court incorrectly determined that a party made a judicial admission in a document made outside the litigation proceedings). While these criteria must be met before a court can determine a judicial admission has occurred, the court must still look at the entire context in which the statements were made before determining whether a statement constitutes a judicial admission. *See Kohne*, 250 Mont. at 113, 818 P.2d at 362 ("whether a statement is a judicial admission depends upon the circumstances of each case"). That portion of the determination we review for an abuse of discretion.

¶15    In this case, the District Court held that Shopko's statements were not judicial admissions based on its determination that (1) they were not statements of fact, and (2) witnesses were available to testify to the facts contained in the statements. Accordingly, our inquiry here is two part. First, we review whether the District Court correctly concluded the statements in questions were not statements of fact. Second, we determine whether the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason when it determined the context did not warrant treating the statements as judicial admissions. *See State v. McLaughlin*, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694 ("An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason.").

8

**I. Did the District Court Correctly Determine that Shopko's Statements Were Not Statements of Fact?**

¶16    In determining that Shopko's statements were not statements of fact, the District Court stated:

> I'm not inclined to treat these as judicial admissions for the following reasons. I don't know that I believe there was a waiver. Each of these is very subjective, it's not a fact as is in the cases that refer to that deal with financial information. . . . And I don't know, I'm just sort of thinking down the road, but I think as we look at 12 people deciding this case I—the correct way is for them to hear from witnesses and judge for themselves the ability to recall what they saw, what they didn't see, rather than me telling them these are presumed facts. Because the judicial admissions—there can't be anything to contravene these. And visibly wet, well, what is visibly wet? Is it all wet, is it just the knees? I think this is going too far for the Court.

The District Court appears to have found Shopko's statements distinguishable from the statements in *Hart* ("It's not a fact as is in the cases that refer to that deal with financial information"). *See Hart*, ¶ 5 (holding party's statement in response brief, "There is no issue of [husband] having failed to pay child support," was a judicial admission). The District Court's distinction appears to be grounded in an apprehension that the jury could interpret these agreed-upon facts in multiple ways ("Each of these is very subjective"). The statements Shopko said it "will not disagree with" were unambiguously statements of fact: "Gloria's pants were visibly wet; she wiped her wet hands on her clothes, she fell forward, hard, landing on her hands and knees; she needed assistance getting up, she got up slowly and was in visible pain/discomfort; and her gait was altered after falling." These are not statements of law, nor are they opinions. *See DeMars*, 285 Mont. at 338, 948 P.2d at 249 (defendant's testimony that automobile accident was all her fault was not

a judicial admission because it was either a legal conclusion, or the expression of her personal opinion).

¶17 The District Court expressed concerns—and the Dissent has adopted these concerns—about the parties being unable to present evidence explaining to the jury how wet is "visibly wet." This concern, however, misapprehends the effect of judicial admissions. While the party who makes a judicial admission cannot introduce evidence contradicting or disproving the admission, nothing prevents a party from introducing evidence elaborating on it. The conclusive effect of judicial admissions means only that no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact. *Kohne*, 250 Mont. at 112, 818 P.2d at 362. Thus, Shopko can introduce testimony as to how wet Bilesky's pants appeared in the video, so long as the testimony does not contradict that her pants were "visibly wet" in the video. The use of adjectives or adverbs that may occur in varying degrees (wet, hard, slowly), however, does not prevent a statement from being a statement of fact.

¶18 Shopko's statements were not statements of law or opinion. They were statements of fact. We accordingly conclude the District Court incorrectly determined Shopko's statements were not statements of fact.

**II. Did the District Court Abuse Its Discretion When It Determined the Circumstances Made It Inappropriate to Hold Shopko's Statements to Be Judicial Admissions?**

¶19 The next question is whether the District Court properly exercised its discretion in determining the circumstances did not warrant treating the statements as a judicial admission.

10

¶20 When determining whether the circumstances warrant holding a statement to be a judicial admission, the court's analysis should be informed by the twofold policy underpinning the rule of judicial admissions. First, like other stipulations, judicial admissions facilitate judicial efficiency and save the parties time, labor, and expense. *See* Wigmore at § 2597, 851–852. Second, judicial admissions protect the integrity of the judicial process by preventing parties from playing fast and loose with the facts to suit the exigencies of self-interest. Judicial admissions prevent intentional self-contradiction from being used as a means of obtaining unfair advantage. As we have previously held, a party may not benefit from asserting one position and later assert a contrary position to the detriment of its opponent at trial. *Rasmussen v. Heebs Food Ctr.*, 270 Mont. 492, 496, 893 P.2d 337, 339-40 (1995).

¶21 Here, the circumstance the District Court relied on in determining a judicial admission had not been made was the availability of witnesses to testify to the contents of the video:

> We have fact witnesses on both sides that can testify to these things. And in fact the Defendant's witnesses can be subject to cross-examination as to their ability to perceive the items that I'm assuming your client and her daughter will testify to. So I don't see this as that sort of scenario where there needs to be a judicial admission because we now have no other way of proving those things and that the party clearly intended.

¶22 The availability of witnesses to testify to the facts contained in an alleged judicial admission is not a circumstance relevant to a determination of whether a statement is a judicial admission. Were the availability of other evidence part of the analysis, there would be no need for the rule that no further evidence may be admitted to prove,

11

disprove, or contradict the admission. The very meaning of a judicial admission is that a fact has been removed from contention, making any evidence proving or disproving that fact immaterial. *See Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (holding the presence of evidence controverting statements in pleadings was immaterial because statements were judicial admissions which preclude all evidence disproving the statements); *accord Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987).

¶23 Two of our prior opinions on judicial admissions illustrate how the circumstances can either warrant or not warrant holding a statement to be a judicial admission. In our first case recognizing judicial admissions, *Kohne v. Yost*, defense counsel argued at closing that both parties were at fault, and conceded numerous times that the defendant was at fault. *Kohne*, 250 Mont. at 111, 818 P.2d at 361. The jury nonetheless returned a verdict that neither party was at fault. The plaintiff moved for a new trial on the basis that the defendant had judicially admitted fault in his closing argument. The defendant's sole argument in opposition was that counsel's statements in closing were not judicial admissions because counsel was merely arguing an alternative legal theory and merely suggesting the defendant was negligent. The district court held it was not a judicial admission and denied the motion for a new trial.

¶24 Kohn appealed and we reversed, holding that defense counsel's intentional strategy of admitting fault was a circumstance that warranted treating counsel's statements in closing argument as judicial admissions. We noted that defense counsel's strategy, both pre-trial and at trial, was to pursue a comparative negligence argument and

12

claim that his client was at fault, but less at fault than the plaintiff. *Kohne*, 250 Mont. at 114, 818 P.2d at 363. In that context, we held that defense counsel's statements were judicial admissions.

¶25 In contrast, in *Weaver v. State*, we held that the context of alternative, inconsistent claims was a circumstance that did not warrant treating counsel's statements in a trial brief as judicial admissions. *Weaver*, ¶¶ 24-26. *Weaver* involved a decision by the State to start a back-burn fire in order to contain a wildfire. The Weavers alleged that the State negligently failed to control the back burn resulting in damage to their property. They amended their complaint to allege, in the alternative to negligence, that the State's actions in starting or managing the back burn constituted inverse condemnation. In their trial brief, the Weavers focused solely on their inverse condemnation claim, stating: "It was surely a reasonable and necessary decision to direct the fire to the east, or to at least let it move across the Weaver property to flatter, defensible space." *Weaver*, ¶ 21. The State moved to dismiss the negligence claim on the basis that the Weavers' statement that the State's actions were "reasonable and necessary" was a judicial admission that the State was not negligent. The district court denied the State's motion, holding that the Weavers' statement was not a judicial admission because it was made in the context of an alternative, inconsistent claim.

¶26 The State appealed and we affirmed on the basis that the context in which the Weavers' statement was made did not warrant treating it as a judicial admission. We held the statement was not a judicial admission, in part, because parties are permitted to plead hypothetical and inconsistent claims. *See* M. R. Civ. P. 8(d)(3). We distinguished

13

*Kohne*, because the context of hypothetical, inconsistent claims does not warrant binding a party to a statement made in relation to one claim, so that the statement applies to a separate and inconsistent claim. Had we allowed a judicial admission under such circumstances, we would have limited the ability of parties to plead mutually inconsistent claims and defenses in the alternative. *See Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir. 1981) ("To allow [claims pleaded in the alternative] to operate as admissions would render their use ineffective and frustrate their underlying purpose. Hence the decisions with seeming unanimity deny them status as judicial admissions, and generally disallow them as evidential admissions." (quoting *McCormick on Evidence*, § 265, 634 (2d ed. 1972))).

¶27    *Kohne* and *Weaver* illustrate that although a trial court retains discretion to determine whether a statement is a judicial admission, that discretion must be exercised in light of the circumstances in the case and the policies underlying the rule of judicial admissions. In *Kohne*, we did not allow a party to admit fault at one stage, and then disavow that admission at a later stage when the admission was no longer useful. In *Weaver*, we did not bind a party, for purposes of its negligence claim, to a statement it made in the context of an alternative claim because the circumstances of alternative, inconsistent claims allow a party to intentionally contradict itself. The circumstances in *Kohne* implicated concerns about intentional self-contradiction being used as a means of obtaining unfair advantage. The circumstances in *Weaver* did not.

¶28    It is readily apparent from comparing the circumstances in this case to *Kohne* and to *Weaver* that this case is much more similar to *Kohne* than to *Weaver*. In *Kohne*, we

14

reversed the district court's determination that counsel's statements were not judicial admission because the circumstances showed counsel's statements were part of an intentional tactical decision. *Kohne*, 250 Mont. at 113, 818 P.2d at 362. In this case, Shopko sought to avoid sanctions for spoliation of the video by ostensibly removing any prejudice to Bilesky. Its tactic for removing any prejudice was to stipulate to certain assertions about the contents of the video. This is evident from the language Shopko used: "[T]he loss of the video has resulted in no prejudice to the Plaintiff or unfair advantage to Shopko. . . . Furthermore, the parties substantially agree on what the video would have shown. Plaintiff sets out in her brief what the video would have shown . . . . Defendant will not disagree with these points." As in *Kohne*, Shopko's actions evince an intentional, tactical decision.

¶29 Further, like the defendant in *Kohne*, Shopko's sole argument on appeal is that its statements say something which the statements plainly do not say. In *Kohne*, the defendant argued the statements were merely "suggestions." *See Kohne*, 250 Mont. at 113, 818 P.2d at 362 ("Defense counsel contends he was only arguing an alternative legal theory and merely suggesting that the defendant was negligent. . . . [D]efense counsel failed to preface these admissions to the jury that the statements were only suggestions."). Here, Shopko has argued only that its waiver ("Defendant will not dispute these points") was conditioned on the District Court finding sanctions appropriate. However, Shopko's brief contains no language indicating its admissions were conditional.

¶30 If we found any language in Shopko's brief reflecting this claimed limitation, our decision today might be entirely different. As the Dissent correctly notes, an offer to

accept a particular sanction in lieu of a harsher sanction is not a judicial admission. Dissent, ¶ 53. There is a significant difference, however, between an offer to admit facts and an admission of facts. "The parties substantially agree on what the video would have shown," and "Defendant will not disagree with these points" are not offers to admit, they are admissions.

¶31 The circumstances of this case bring it squarely within the ambit of *Kohne*. If the circumstances in *Kohne* warranted reversing the district court's determination that there was no judicial admission, then the circumstances here warrant reversal. Accordingly, we hold the District Court exceeded the bounds of discretion when it determined the circumstances did not warrant holding Shopko's statements to be judicial admissions.

¶32 The Dissent is concerned that we are holding Shopko's statements to be a judicial admission when Shopko "consistently maintained that when it referenced the four points in its answer brief to the motion for sanctions, it was merely reciting what Bilesky had set forth in her opening brief." Dissent, ¶ 47. Shopko, however, did not merely recite what Bilesky set forth in her brief. What dispels any doubt about our decision here is the language that precedes and follows the list of facts: "Furthermore, *the Parties substantially agree on what the video would have shown*." (Emphasis added.) Shopko then recites those facts from Bilesky's proposed instruction it agreed with and followed the list with an unambiguous stipulation to these facts: "*Defendant will not disagree with these points.*" (Emphasis added.) Shopko then concluded with a separate list of facts it disagreed with, followed by the statement, "These points remain in dispute." These statements fit exactly within the definition of a judicial admission: an express waiver of

16

the right to dispute certain facts at trial. It is the statements before and after the recitation of facts that leave us with no doubt that this was a judicial admission, not merely the recitation of facts from Bilesky's proposed instruction. While such language need not always be present to create a judicial admission, its presence in this case convinces us that Shopko admitted to the facts in question. This language also leads us to disagree with the Dissent's assertion that "Shopko was consistent in its position that these points were in dispute." Dissent, ¶ 48. Saying the parties "agree" on listed facts, and asserting that "[we] will not disagree with" those facts, is inconsistent with a desire to dispute those facts—especially when those facts are kept carefully segregated from the list of facts that "remain in dispute."

## CONCLUSION

¶33 Shopko's statements were statements of fact made by a party's attorney to the court. None of the circumstances of this case warrant treating the statements as anything other than judicial admissions. Bilesky was entitled to prepare her case in reliance on the written admissions Shopko made in its Response Brief. The District Court abused its discretion when it denied Bilesky's request to present the admissions to the jury as uncontested facts, and when it allowed Shopko to present evidence contradicting these admissions.

¶34 Reversed and remanded for a new trial consistent with this opinion.


/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶35    I am not as confident as the Court in concluding that Shopko's statements were unequivocal and constituted a deliberate waiver, expressly conceding certain facts. As discussed below, the statements originally were made by *Bilesky's counsel*, not Shopko's counsel, in the context of a motion for sanctions under M. R. Civ. P. 37 for spoliation of evidence. Shopko's counsel never asserted unequivocally that the statements were true, nor did Shopko's counsel indicate that he had confirmed the truth of the statements with someone affiliated with Shopko. Indeed, Shopko employees ultimately contradicted some of the statements at trial. What Shopko's counsel did was express willingness to admit four "points" that the lost video surveillance footage allegedly would have shown, as an alternative to the harsher remedy of having a default judgment entered against Shopko on liability. The District Court considered whether sanctions should be imposed and determined that Shopko had made a mistake and that sanctions were not appropriate. That decision, which is not on appeal, mooted Shopko's offer to admit certain points. We thus should not attempt to impose a sanction indirectly by finding a judicial admission.

¶36    After rendering its decision on sanctions, the District Court considered Bilesky's claim that Shopko had made judicial admissions, thereby conclusively preventing Shopko

18

from offering evidence on the subject of the purported admissions. The District Court did not believe that Shopko had made such a waiver. The District Court knew the context in which the statements had been made. Based on its review of the record and the discussions with counsel, the District Court found that Shopko's statements were too equivocal to constitute judicial admissions. Further, in exercising its discretion, the District Court determined that eyewitness testimony would be more valuable to the jury than the "subjective" statements of counsel about what the video would have shown. The District Court did not find that Shopko was "playing fast and loose with the facts to suit the exigencies of self-interest," as this Court determines on the basis of a cold record. Opinion, ¶ 20. Nor did the District Court find that Shopko was attempting to change its position, as the Court also implies. Opinion, ¶ 20. The District Court concluded that the jury needed to hear the eyewitness testimony regarding the particular facts in order to fulfill its fact-finding function. The District Court thus concluded that the supposed judicial admissions by *both* parties—Shopko's four points, and Bilesky's references in her briefs to the puddle of water as being "invisible"—would not be presented to the jury as judicial admissions. I believe the District Court was in the best position to interpret the statements made by counsel within the context of these proceedings.

¶37 In nevertheless holding that the District Court "exceeded the bounds of reason" in refusing to treat the statements as judicial admissions, Opinion, ¶¶ 15, 31, the Court ignores the established principle that trial judges have broad discretion to relieve a party from the consequences of a judicial admission. Thus, even if the statements in Shopko's brief were judicial admissions, as the Court opines, we must defer to the District Court's

19

decision about whether Shopko must bear the consequences of those admissions. On the record before us, I believe the District Court in no way "exceeded the bounds of reason" in deciding to relieve Shopko of its supposed admissions. For these reasons, I dissent.

¶38 To understand the District Court's decision, and why I believe we should defer to that decision, it is necessary to provide greater context of the pretrial proceedings. In her brief in support of her motion for sanctions, Bilesky requested that Shopko be sanctioned for losing the video surveillance footage. Citing M. R. Civ. P. 37(c)(1), Bilesky argued that the possible remedies for this alleged discovery violation included barring Shopko from relying, in support of its defense, on what the video would have shown. She also argued that default judgment on liability was a possible sanction, citing *Richardson v. State*, 2006 MT 43, 331 Mont. 231, 130 P.3d 634. Bilesky asked the court to grant her default judgment on the issue of liability and to instruct the jury that it could draw negative inferences against Shopko. Alternatively, she requested that the court preclude Shopko from asserting a comparative negligence defense. Within the context of arguing that she had suffered prejudice due to the loss of the video footage, Bilesky asserted that the footage would have proved certain facts, which she then listed in her brief.

¶39 In its answer brief, dated December 7, 2012, Shopko contended that no discovery abuse had occurred. But should the District Court disagree with this contention, Shopko argued that Bilesky's proposed remedy of a default judgment on liability was too harsh. Shopko indicated that it would not disagree with certain "points" in Bilesky's list of what the video footage allegedly would have shown. This is one of the available sanctions specified in Rule 37. *See* M. R. Civ. P. 37(b)(2)(A)(i), (c)(1)(C) (the court may order that

20

"designated facts be taken as established for purposes of the action, as the prevailing party claims"). At the same time, however, Shopko noted that eyewitness testimony and company records would show what had actually occurred. Moreover, Shopko indicated that other points in Bilesky's list were disputed. Shopko's statements are set forth, in their entirety, as follows:

> Even if this court is inclined to rule otherwise [i.e., that an abuse of discovery has occurred], the loss of the video has resulted in no prejudice to Plaintiff or unfair advantage to Shopko. In fact, if anything, the loss of the video creates more prejudice for Shopko than Plaintiff.
> Furthermore, the Parties substantially agree on what the video would have shown. Plaintiff sets out in her brief what the video would have shown:
>
> - Gloria's pants were visibly wet;
> - She wiped her wet hands on her clothes[;] she fell forward, hard, landing on her hands and knees;
> - She needed assistance getting up, she got up slowly and was in visible pain/discomfort; and
> - Her gait was altered after falling.
>
> Defendant will not disagree with these points. Eyewitness testimony and company records show what occurred on the day of Plaintiff's fall. However, several other points Plaintiff claims the video would have shown [are] inaccurate based on eyewitness accounts. Those points are:
>
> - The caution, wet floor signs were not out;
> - The carpets were saturated with water;
> - No employee had even checked the area for at least 35 minutes; and
> - No maintenance had been done for an extended period prior to Gloria's fall.
>
> These points remain in dispute. A video would have confirmed [whether these points are true].

21

¶40 Bilesky filed a reply brief on December 24, 2012. At the outset, she articulated her view of the specific issue before the court: "Shopko does not deny destroying critical video evidence. Gloria Bilesky has been prejudiced because of Shopko's actions. The issue is, what is the appropriate remedy?" Bilesky maintained that a "default judgment on liability" was the proper remedy. However, recognizing that the District Court might find this remedy "too harsh under the circumstances presented," Bilesky proposed an alternative remedy that included the following jury instruction:

> The Defendant admits that the video proved that:
> i.      Gloria's pants were visibly wet;
> ii.     She wiped her wet hands on her clothes;
> iii.    She fell forward, hard, landing on her hands and knees;
> iv.     She needed assistance getting up, she got up slowly and was in visible pain/discomfort; and
> v.      Her gait was altered after falling.

Again, this instruction was offered as a proposed sanction for Shopko's loss of the video evidence. As such, the instruction was derivative of Bilesky's motion for sanctions and was dependent upon the District Court's determining, as a threshold matter, that Shopko should indeed be sanctioned. The proposed jury instruction was not premised on an independent theory of judicial admissions.

¶41 The District Court denied Bilesky's motion for sanctions in an order dated December 31, 2012. The court found as follows:

> Shopko attempted to preserve the evidence in question, albeit in vain. Shopko was under no general duty to preserve the surveillance footage and could have just let the footage be recorded over; however, an attempt to download the footage onto a DVD was made when the Store Manager became aware that an accident occurred in the store. Once on notice of a

22

> potential lawsuit, and the potential evidentiary value of the video, Shopko had a duty not to destroy the potential evidence with the design to disrupt or defeat the potential lawsuit. There is no reason to believe that the mistake in downloading the footage was anything other than inadvertent. Further, the attempt to download the footage to a DVD does not change the fact that the footage from the day of the accident was recorded over as a result of regular scrubbing of the digital recording system's surveillance videos. . . . The surveillance footage was destroyed pursuant to the good-faith operation of the digital recording system and there are no exceptional circumstances present; therefore, the Court may not impose sanctions.

In finding that Shopko should not be sanctioned, the District Court necessarily denied Bilesky's proposed remedy of a jury instruction stating that Shopko had admitted to certain matters that the video footage would have shown. Likewise, the District Court necessarily rejected Shopko's offer to concede these points in lieu of suffering a default judgment on liability.

¶42 The Pretrial Order was entered on January 2, 2013. Among other things, the Pretrial Order sets forth the Agreed Facts in the case—i.e., those which "are admitted, agreed to be true, and require no proof." Two, and only two, facts are listed:

1. Jurisdiction and venue are proper in this Court.
2. Surveillance video footage captured Gloria Bilesky entering, falling, and leaving Shopko on the afternoon of Sunday, January 30, 2011.

There is no mention, in the Agreed Facts, of Shopko's supposed judicial admissions. To the contrary, the points that we now hold were "judicial admissions" are instead listed in the Pretrial Order under the heading "Plaintiff's Contentions," along with the points that Shopko stated in its answer brief "remain in dispute." Counsel for Bilesky approved and signed the Pretrial Order "as to form and content." It was also approved and signed by

23

counsel for Shopko and the District Court judge. Thus, the position of the parties at this juncture was that the points which the video would have shown were "Plaintiff's Contentions," *not* "Agreed Facts."

¶43 Bilesky then changed her position. On January 29, 2013—six days before trial—Bilesky filed a Trial Brief in which she asserted that the District Court should read to the jury the instruction that she had previously proposed as an alternative sanction for Shopko's loss of the video footage:

> In order to use the Court's time most effectively, during Plaintiff's case-in-chief, Plaintiff's counsel will ask the Court to read the following undisputed facts:
>
> .   .   .
>
> 3.    The surveillance video showed that:
> –    Gloria fell forward, hard, landing on her hands and knees,
> –    she needed assistance getting up; she got up slowly and was in visible pain/discomfort,
> –    her pants were visibly wet,
> –    she wiped her wet hands on her clothes, and
> –    her gait was altered after falling.

¶44 Shopko promptly objected to Bilesky's proposal that the District Court read the foregoing points to the jury, observing that "[t]hey are not undisputed." Shopko indicated that the only undisputed facts in the case were the two listed in the "Agreed Facts" section of the Pretrial Order. In response, Bilesky filed a supplemental brief on February 4, 2013—the first day of trial—raising the theory that Shopko's statements in its December 7, 2012 brief opposing sanctions were "judicial admissions."

¶45 The District Court considered Bilesky's request at the pretrial conference that morning and determined that the four points listed in Shopko's brief (which Bilesky's counsel listed as five points in the proposed jury instruction) were subjective and that Shopko had not made an express waiver of these points. The District Court determined that eyewitness testimony, rather than the subjective statements of counsel about what the video presumably would have shown, should be submitted to the trier of fact. Thus, the District Court declined to treat the four points as judicial admissions.

¶46 At trial, Bilesky again attempted to introduce language regarding the four points. When Shopko's employee (the local store manager) did not testify consistently with some of the four points, Bilesky sought to impeach him with the language in Shopko's brief. Shopko objected that Bilesky could not impeach a witness with statements that the witness did not make. M. R. Evid. 801. A mid-trial conference ensued during which the District Court entertained further arguments on whether to treat the statements in Shopko's December 7, 2012 brief as judicial admissions. The court ultimately reaffirmed its initial ruling that the statements should not be treated as judicial admissions. In so doing, the District Court supplemented its reasoning, explaining that the four points were not "facts" that had been provided to Shopko's counsel by his client, and that the parties had not agreed that the four points could not be disputed at trial. The court's ruling, however, was not as one-sided as the Court implies. Opinion, ¶ 9. The District Court told Bilesky's counsel that she could cross-examine Shopko employees by asking them: "If someone else in your organization said this [i.e., one of the four points], do you agree

25

or disagree with it?" After trial resumed, Bilesky proceeded to question Shopko's manager in this fashion.

¶47 Shopko has consistently maintained that when it referenced the four points in its answer brief to the motion for sanctions, it was merely reciting what Bilesky had set forth in her opening brief. Shopko has also consistently maintained that it never expressly waived contesting these points, and that the purpose in reciting these points was to propose a concession as an alternative to the harsher remedy of having a default judgment entered against it on liability. This explanation is consistent with what transpired in the briefing on Bilesky's motion for sanctions. In her opening brief, Bilesky proposed that the District Court—as a sanction against Shopko—give the jury three instructions, none of which included Shopko's admission to certain facts. The three instructions simply allowed the jury to draw negative inferences against Shopko for its loss of the video footage, and directed the jury that Bilesky was not comparatively at fault for her injury as a matter of law. Following Shopko's answer brief, Bilesky filed a reply brief in which she added a fourth proposed instruction (quoted at ¶ 40 above) directing the jury that Shopko had admitted certain points. Again, Bilesky proposed this as a *sanction*, which the District Court rejected when it found that Shopko should not be sanctioned.

¶48 Shopko's pretrial contentions and correspondence to Bilesky indicated that the four points were disputed. Shopko was consistent in its position that these points were in dispute. Shopko explained during the mid-trial conference:

> THE COURT: But Mr. Duerk, they're in your brief, so presumably they're not made up, somebody must have told you or someone in your law firm at some point that these were the facts.

26

MR. DUERK: That came from Plaintiff's counsel. And not knowing the facts myself, and as a concession here at the time as a fallback argument if we were going to be sanctioned for losing this surveillance video that was the concession that I was willing to make at that time. They are part of a sanction, though, and we have not been sanctioned for this, and under Rule 37(e) this is not sanctionable activity.

So to now go back and sanction us and permit that sanction to be the basis for the impeachment of a fact witness who unequivocally and unambiguously has a different recollection, it doesn't make sense, Your Honor.

Bilesky herself conceded during this mid-trial conference that Shopko had set forth the four points in its December 7, 2012 brief in order "to avoid sanctions."

¶49 The principle is well established that, in order to qualify as a judicial admission, an attorney's statement must be deliberate, clear, and unambiguous. *Lima v. Holder*, 758 F.3d 72, 79 (1st Cir. 2014); *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014); *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 528 (6th Cir. 2014); *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010); *Phys. Comm. for Responsible Med. v. Applebee's Intl., Inc.*, 168 Cal. Rptr. 3d 334, 345 (Cal. Ct. App. 2014); *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 12, 748 A.2d 961; *Lebeck v. Lebeck*, 1994 NM Ct. App. 103, ¶ 14, 881 P.2d 727; *Coleman v. Wyeth Pharms., Inc.*, 6 A.3d 502, 524-25 (Pa. Super. Ct. 2010). The statement must be an express waiver conceding the truth of an alleged fact, and it must be an unequivocal statement of fact. *Kohne v. Yost*, 250 Mont. 109, 112-13, 818 P.2d 360, 362 (1991) (citing *Childs v. Franco*, 563 F. Supp. 290, 292 (E.D. Pa. 1983)); *see also Hart v. Hart*, 2011 MT 102, ¶ 18, 360 Mont. 308, 258 P.3d 389; *Bitterroot Intl. Sys., Ltd. v. W. Star Trucks, Inc.*,

2007 MT 48, ¶ 41, 336 Mont. 145, 153 P.3d 627; *Conagra, Inc. v. Nierenberg*, 2000 MT 213, ¶ 45, 301 Mont. 55, 7 P.3d 369. "'An unequivocal statement is one that is clear, unambiguous and expresses only one meaning.'" *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 713 (Pa. Super. Ct. 2003) (quoting *Phila. Reinsurance Corp. v. Emplrs. Ins. of Wausau*, 61 Fed. Appx. 816, 819 (3d Cir. 2003)). "A judicial admission must be a statement of fact within the speaker's personal knowledge." *Lebeck*, ¶ 14 (citing *Derby Meadows Util. Co., Inc. v. Inter-Contl. Real Estate*, 559 N.E.2d 986, 991 (Ill. App. Ct. 1990)). The expression of an opinion does not qualify as a judicial admission. *DeMars v. Carlstrom*, 285 Mont. 334, 338, 948 P.2d 246, 249 (1997). Likewise, a court "should not consider statements of counsel's conception of the legal theories of the case to be binding." *Kohne*, 250 Mont. at 113, 818 P.2d at 362. Because of their binding consequences, judicial admissions generally arise only from deliberate and voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact. *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975).

¶50 Whether a particular statement constitutes a judicial admission "depends upon the circumstances of each case," *Kohne*, 250 Mont. at 113, 818 P.2d at 362, and is committed to the sound discretion of the trial court, *Weaver v. State*, 2013 MT 247, ¶ 19, 371 Mont. 476, 310 P.3d 495. Given the context in which Shopko made the statements now in dispute—i.e., in responding to Bilesky's motion for sanctions—I am not convinced the District Court abused its discretion in determining that those statements did not constitute an express waiver conceding the truth of the "points" set forth by Bilesky, such that

28

Shopko would be prevented "from introducing further evidence to prove, disprove, or contradict the admitted fact." *Weaver*, ¶ 20 (internal quotation marks omitted).

¶51 First, the District Court found some doubt as to whether the statements in Shopko's brief constituted clear and unambiguous statements of fact. The court noted that the statements were the opinions of the attorneys about what the lost video footage presumably would have shown. The statements themselves were subjective. "Gloria's pants were visibly wet." How wet? A couple of spots? Her entire pants? Gloria fell "hard." Twelve jurors could have twelve different ideas of what constitutes a "hard" fall. She "got up slowly." How slowly? Ultimately, given the availability of eyewitnesses who could testify and be cross-examined as to these issues, the District Court ruled that the matter should be left to the determination of the jury. I cannot find this to be an abuse of discretion.

¶52 The Court ignores the principle that a statement must be clear, unambiguous, and express only one meaning in order to qualify as a judicial admission. Instead, the Court manufactures a new rule that, although no further evidence may be introduced to prove, disprove, or contradict a judicially admitted fact, evidence may be introduced to "elaborate" on the admitted fact. Opinion, ¶ 17. The Court cites no authority for this rule. Moreover, the need for "elaboration" only confirms that the supposed "facts" here are not clear, unambiguous, and unequivocal. Indeed, they are the subjective opinions of Bilesky's counsel about what the jurors would have perceived from the lost video footage. "Gloria fell forward" is plausibly an unambiguous fact—one that Shopko's manager admitted under questioning by Bilesky's counsel. But "Gloria fell forward

hard" is an opinion. Likewise, Gloria "got up slowly" is an opinion, as is Gloria was in "visible pain" and her "gait was altered." As noted, a judicial admission must be a statement of fact within the speaker's personal knowledge. Shopko's counsel had no personal knowledge that "Gloria fell forward hard," that she "got up slowly," that she was in "visible pain," and that her "gait was altered." Accordingly, I disagree with the Court's holding that all of the statements here were statements of fact. Opinion, ¶ 18.

¶53 Second, the District Court determined that the circumstances did not warrant treating Shopko's statements as judicial admissions. Originally, Shopko was willing to concede the four "points" as a possible sanction. Shopko's theory was this: (1) we are not liable for sanctions, but (2) if the court concludes otherwise, then we are willing to concede certain points as an alternative to the entry of a default judgment against us. M. R. Civ. P. 37(b)(2)(A)(i), (c)(1)(C) (the court may sanction a party by ordering that "designated facts be taken as established for purposes of the action, as the prevailing party claims"). Ordering that "designated facts be taken as established for purposes of the action" is comparable to treating those facts as judicial admissions. *See Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008) (referring to a sanction under Rule 37(b)(2)(A)(i) as "[t]he judicial admission of certain facts as established"); 2 Kenneth S. Broun et al., *McCormick on Evidence* § 254, 262 (7th ed. 2013) (explaining that judicial admissions, as contrasted with evidentiary admissions, "are formal concessions in the pleadings in the case or stipulations by a party or counsel *that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact*" (emphasis added)). Thus, Shopko's counsel essentially offered, as a lesser

30

sanction under Rule 37, to have certain points, which the video allegedly would have shown, treated by the court as judicial admissions. However, a conditional offer of this nature to accept a particular sanction in lieu of a harsher sanction is not, in my view, the same as making an express and unconditional waiver conceding unequivocally the truth of an alleged fact—especially where, as here, the trial court declines to impose any sanctions at all. The Court, notably, concedes this point. Opinion, ¶ 30.

¶54 Bilesky's approach at this point in the proceedings was the same as Shopko's. She proposed instructing the jury that Shopko had admitted the listed points *as a possible sanction for Shopko's loss of the video footage*, not based on the theory of judicial admissions. Bilesky only articulated a judicial admission theory after her motion for sanctions had failed (and, notably, after signing the Pretrial Order which stated that the four points were *Plaintiff's Contentions*, not Agreed Facts). As explained, this occurred when Bilesky filed her January 29, 2013 Trial Brief, requesting that certain "undisputed facts" be read to the jury. This apparently came as a surprise to Shopko, given that these had not been listed as Agreed Facts in the Pretrial Order. Shopko promptly responded on January 30, 2013, that the alleged "undisputed facts" in Bilesky's Trial Brief were, in fact, disputed. Bilesky then filed her supplemental brief on February 4, 2013—the morning of trial—raising for the first time her judicial admission theory.

¶55 Contrary to the foregoing procedural history, the Court announces that Shopko did not offer to admit facts, but instead actually admitted facts. Opinion, ¶ 30. In so doing, the Court errs by reading passages from Shopko's December 7, 2012 brief in isolation and by failing to give proper deference to the District Court judge's evaluation of

31

Shopko's explanation. Opinion, ¶¶ 28-32. Focusing on particular statements in the brief, the Court announces that Shopko intended to unequivocally admit the four points. Opinion, ¶¶ 28, 30. Could Shopko's counsel have articulated his purpose more concisely, using the "conditional" language that the Court now opines should have been used? Opinion, ¶¶ 29-30. Perhaps. However, prior to today's decision, the law has never involved such technical requirements. According to the Court's own two-pronged test, Opinion, ¶ 14, we must consider "the entire context" and "circumstances" of Shopko's statements—not only what was written in a single brief, but also what was discussed thereafter among the District Court judge and the attorneys.

¶56 When Bilesky finally raised her judicial admission theory on the morning of trial, Shopko's counsel explained the purpose of his statements: they were an offer to admit certain points that Bilesky's counsel claimed the lost video footage would have shown, *in lieu of suffering a default judgment on liability*. Shopko's counsel did not represent that these points were actually true; he simply expressed willingness to concede the points as a remedy should the District Court find that a discovery violation had occurred. The District Court judge believed this explanation. The judge made a critical finding: that Shopko's counsel did not intend to unequivocally concede the truth of the four points. The judge recognized that an offer to have certain points deemed established as a lesser sanction for discovery abuse, M. R. Civ. P. 37(b)(2)(A)(i), is not the same as a judicial admission. Bilesky's counsel, no less, conceded that Shopko's intent was "to avoid sanctions."

¶57 In these circumstances, it is wrong for this Court to announce, based on the cold record before us, that we know better than everyone else what was really going on: that Shopko's counsel was engaging in "intentional self-contradiction" and "playing fast and loose with the facts to suit the exigencies of self-interest." Opinion, ¶ 20. In case after case, this Court has stated that *the trial court* is in the best position to determine credibility, since the trial judge is the one who is intimately familiar with the details of the case and who personally hears and observes the witness or, as here, the attorney. *Ditton v. Dept. of Just.*, 2014 MT 54, ¶ 33, 374 Mont. 122, 319 P.3d 1268; *Benjamin v. Anderson*, 2005 MT 123, ¶ 37, 327 Mont. 173, 112 P.3d 1039; *State v. Kaufman*, 2002 MT 294, ¶ 12, 313 Mont. 1, 59 P.3d 1166. Moreover, this Court has stated repeatedly that our review of factual determinations is not whether the record supports *different* findings, but whether the record supports the findings actually made. *Lyndes v. Green*, 2014 MT 110, ¶ 15, 374 Mont. 510, 325 P.3d 1225; *Deschamps v. Treasure State Trailer Court, Ltd.*, 2010 MT 74, ¶ 45, 356 Mont. 1, 230 P.3d 800. The District Court evaluated the credibility of Shopko's explanation and determined that Shopko did not intend to unequivocally concede the truth of the four points. The record supports this finding, and it is not our prerogative to impugn the District Court's decision based on conjecture about what we think Shopko *really* meant.

¶58 In *Weaver v. State*, 2013 MT 247, 371 Mont. 476, 310 P.3d 495, we observed that "a judicial admission is not effective if it was subsequently modified or explained so as to show that the litigant was mistaken." *Weaver*, ¶ 26 (internal quotation marks omitted). Thus, since "the Weavers immediately modified the disputed language to clarify their

33

intended meaning," we held that the district court did not abuse its discretion in determining that the statement did not constitute a judicial admission. *Weaver*, ¶ 26. Here, Shopko promptly objected to Bilesky's claim in her Trial Brief that the four points were undisputed. To the extent it had made a judicial admission—which Shopko has never conceded—Shopko clearly withdrew it, and did so in advance of trial. *Weaver* thus supports the District Court's ruling in the present case and undermines the Court's decision to impose a judicial admission on Shopko *based solely on what Shopko said in its December 7, 2012 brief*.

¶59  Furthermore, "considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in appropriate cases." *Belculfine*, 527 F.2d at 944; *accord MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). Thus, even if Shopko's statements met all the criteria of a judicial admission, the District Court had discretion to relieve Shopko of the admissions. *See Coral v. Gonse*, 330 F.2d 997, 998 n.1 (4th Cir. 1964) ("Of course, even a judicial admission does not always foreclose a different position. If the District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in its discretion, relieve the party of its otherwise binding consequence."); *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp. 2d 394, 406 (D.N.J. 2000) ("While it is true that a judicial admission normally binds the party making it throughout the course of the action, it is also well-established that trial judges are given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases."); 30B Michael H.

34

Graham, *Federal Practice and Procedure* § 7026, 331 (interim ed. 2011) ("The trial court possesses discretion to relieve a party from the consequences of a judicial admission."); 9 John Henry Wigmore, *Evidence in Trials at Common Law* § 2590, 822-23 (Chadbourn rev. 1981) ("In view . . . of the commendable purpose which leads (or ought to lead) to the voluntary making of admissions, it is always said—and properly so—that the trial court has discretion to avoid the consequence of conclusiveness of an admission.").

¶60 The Court fails to apply the foregoing principle and to accord proper deference to the District Court's discretionary decision to relieve Shopko of the consequences of its supposed judicial admissions. Instead, the Court selects two precedents—*Kohne* and *Weaver*—and announces it is "readily apparent" that the present case is closer to *Kohne* than to *Weaver*. Opinion, ¶¶ 23-28. I do not agree with the Court's implicit premise that trial courts are required to fit the unique circumstances of a given case into the framework of either *Kohne* or *Weaver*. Each case must turn on its unique facts, and it is wrong to suggest, as the Court does, that *Kohne* and *Weaver* reflect all of the pertinent considerations in deciding whether to relieve a party of its admissions. As discussed, the present case is unique in that the statements at issue were made in the context of a motion for sanctions under M. R. Civ. P. 37. Shopko's counsel explained his intent in offering to admit the truth of certain points. The District Court found counsel's explanation credible. If anything, the present case is closer to *Weaver* in that Shopko "immediately modified the disputed language to clarify [the] intended meaning." *Weaver*, ¶ 26. In my view, the subjective nature of the supposed admissions, Shopko's prompt objection to Bilesky's Trial Brief, Shopko's explanation that it had not intended to make any judicial

35

admissions, and the availability of eyewitness testimony, together, constituted proper circumstances for the District Court to exercise its discretion and relieve Shopko of the judicial admissions it allegedly had made.

¶61 In sum, it is my view that this Court has not given proper deference to the discretion of the trial court in making its evidentiary ruling. The Court has failed to appreciate the entire context of Shopko's statements and the District Court's ruling, and has failed to respect the trial court's determination that the trier of fact should hear eyewitness testimony rather than the subjective impressions of counsel. While this Court, had it been presiding over the trial proceedings, might have arrived at a different evidentiary decision, our task is to determine whether the District Court abused its discretion. I am not convinced that Shopko's statements constitute an express waiver and I, therefore, cannot find that the District Court abused its discretion. Furthermore, even assuming, for the sake of argument, that the statements constituted judicial admissions, the District Court had discretion to relieve Shopko from the admissions, which the court obviously did. It is thus inappropriate for this Court to usurp the District Court's discretionary decision-making and to impose on Shopko an express waiver conceding the truth of the four points.

¶62 I dissent.

/S/ LAURIE McKINNON